**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 10 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DION A. SMALLWOOD,

        Petitioner - Appellant,

        v.

GARY GIBSON, Warden, Oklahoma
State Penitentiary; ATTORNEY
GENERAL OF THE STATE OF
OKLAHOMA,

        Respondents - Appellees.

No. 98-6397

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D. Ct. No. 97-CV-1625)**

K. Leslie Delk, Norman, Oklahoma, appearing for Petitioner-Appellant.

Seth S. Branham, Oklahoma Attorney General Office (W.A. Drew Edmondson,
Attorney General of Oklahoma, and William L. Humes, Assistant Attorney
General, on the brief), Oklahoma City, Oklahoma, appearing for Respondents-
Appellees.

Before **PORFILIO** , **ANDERSON** , and **TACHA** , Circuit Judges.

**TACHA** , Circuit Judge.

Following a jury trial in the Oklahoma County District Court, petitioner Dion A. Smallwood was convicted of First Degree Murder and Third Degree Arson in May of 1993. Mr. Smallwood received a capital sentence for the murder conviction and fifteen years imprisonment and a $10,000 fine for the arson conviction. The Oklahoma Court of Criminal Appeals ("OCCA") upheld both convictions and sentences. See Smallwood v. State, 907 P.2d 217 (Okla. Crim. App. 1995). On November 12, 1996, the United States Supreme Court denied certiorari. See Smallwood v. Oklahoma, 519 U.S. 980 (1996). Mr. Smallwood filed an application for post-conviction relief with the OCCA on December 9, 1996. The OCCA denied Mr. Smallwood's application on April 15, 1997. See Smallwood v. State, 937 P.2d 111 (Okla. Crim. App. 1997). On February 17, 1998, Mr. Smallwood filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. § 2254, asserting twenty-six grounds for relief from his state convictions and sentences. The district court denied Mr. Smallwood's habeas petition on August 4, 1998, and it granted a certificate of appealability for all issues raised on appeal.

Petitioner asserts the following grounds for relief: (1) the state courts erroneously denied Mr. Smallwood's motion to suppress evidence acquired as the result of an illegal detention; (2) the federal district court erred in denying Mr. Smallwood an evidentiary hearing on his ineffective assistance of counsel claims;

-2-

(3) petitioner's counsel was constitutionally ineffective at the trial, sentencing, appellate, and post-conviction stages; (4) the trial court violated petitioner's constitutional rights by failing to instruct the jury that mitigating factors need not be found unanimously; (5) the jury instructions given by the trial court were unconstitutional because they permitted the jury to ignore mitigating evidence; (6) the jury instructions were constitutionally impermissible because they failed to state that, to impose a capital sentence, the jury must find aggravating factors outweigh mitigating factors beyond a reasonable doubt; (7) the trial court violated petitioner's constitutional rights by failing to instruct the jury that there is a presumption of life in death penalty cases; (8) the jury instructions were unconstitutional because they did not properly limit the jury's consideration of sympathy to the defendant, rather than the decedent; (9) the trial court violated petitioner's constitutional rights by failing to instruct the jury that it had the option of imposing a life sentence even if it found aggravating factors outweighed mitigating factors; (10) Oklahoma's "heinous, atrocious, and cruel" aggravating factor is unconstitutional, and the evidence did not support such a factor; (11) prejudicial photographs of the decedent's burned corpse admitted into evidence rendered Mr. Smallwood's trial fundamentally unfair; (12) prosecutorial misconduct tainted petitioner's trial; (13) Mr. Smallwood was denied a fair trial because evidence of other crimes and bad acts was admitted at both the trial and

sentencing stages; (14) Mr. Smallwood was found competent to stand trial under an unconstitutional standard; and (15) petitioner's constitutional rights were violated because defense counsel was unaware of ex parte communications from the jury to the trial court judge until after the fact. We affirm.

We do not attempt to present a full summary of the facts underlying this case, for they are adequately set forth in the OCCA's opinion on appeal.      See Smallwood , 907 P.2d at 222-23. Instead, we mention only those facts pertinent to our analysis of the issues on appeal.

## Standard of Review

When reviewing the denial of a habeas corpus petition, we are generally subject to two different frameworks of review, depending upon whether the state courts addressed the merits of the claim for relief. If the state courts have not heard the claim on its merits, we review the district court's legal conclusions de novo and its factual findings, if any, for clear error.[1] See, e.g., Newsted v. Gibson, 158 F.3d 1085, 1089 (10th Cir.), cert. denied, 119 S. Ct. 1509 (1999). If the state courts have addressed the claim on its merits, we review the state court ruling under the standard enunciated in 28 U.S.C. § 2254. Because Mr.

---

[1] When the district court's findings are based merely on a review of the state record, we do not give them the benefit of the clearly erroneous standard but instead conduct an independent review. See Cunningham v. Diesslin, 92 F.3d 1054, 1062 n.6 (10th Cir. 1996).

-4-

Smallwood filed his habeas petition on February 18, 1998, after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),     Pub. L. No. 104-132, 110 Stat. 1214 (1996), we apply the provisions of   28 U.S.C. § 2254, as amended by AEDPA. See, e.g., Hooks v. Ward, __F.3d__, No. 98-6196, 1999 WL 502608, at *4 (10th Cir. July 16, 1999). Under these provisions, a federal court is precluded from granting habeas relief on any claim adjudicated on the merits by the state court, unless the state proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2).[2] In addition, we presume the factual findings of

---

[2] The federal courts of appeals have adopted differing interpretations of the standards of deference under § 2254(d)(1).       See, e.g. , Matteo v. Superintendent, SCI Albion , 171 F.3d 877, 885-887 (3d Cir. 1999) (citing cases),       petition for cert. filed , 67 U.S.L.W. 3008 (U.S. June 22, 1999) (No. 98-2050);     Nevers v. Killinger  , 169 F.3d 352, 357-62 (6th Cir.) (citing cases),      cert. denied , 119 S. Ct. 2340 (1999); O'Brien v. Dubois  , 145 F.3d 16, 21-25 (1st Cir. 1998);      Green v. French  , 143 F.3d 865, 870-73 (4th Cir. 1998),     cert. denied , 119 S. Ct. 844 (1999). The Supreme Court has granted certiorari to settle the differences in interpretation. See Williams v. Taylor   , 119 S. Ct. 1355 (1999). Despite the varied interpretations, "[t]he disagreement is not about whether the AEDPA requires a high degree of deference to the state court's judgment; rather, it is about how to gauge the degree of deference necessary."      Nevers , 169 F.3d at 361. Under any of the deferential standards announced by the circuits, this appeal would reach the same result. Therefore, we decline to adopt a specific interpretation of § 2254(d)(1) in this case.

the state court are correct unless petitioner can rebut this presumption by clear and convincing evidence. See id. § 2254(e)(1).

## Discussion

### I. Fourth Amendment Violation

Petitioner first argues that his conviction stemmed from evidence obtained as the result of an unconstitutional detention. The district court found that the Supreme Court's decision in Stone v. Powell, 428 U.S. 465 (1976), barred petitioner's claim. Under Stone, habeas relief shall not be granted on the ground that the trial court admitted evidence obtained in violation of the Fourth Amendment despite the judicially-created exclusionary rule, provided that the defendant had an opportunity for full and fair litigation of the Fourth Amendment claim. See id. at 481-82. We review de novo whether a petitioner had an opportunity for full and fair litigation of his or her Fourth Amendment claim in state court. See Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir. 1992). Nothing in the record indicates that Mr. Smallwood was deprived of such an opportunity. To the contrary, petitioner filed a motion to suppress the evidence resulting from his alleged unlawful seizure and repeatedly objected to the admission of this evidence before the Oklahoma County District Court. [3] Petitioner's trial counsel

_____

[3] The OCCA summarized the specific pieces of evidence that were the subject of petitioner's motion to suppress and objections in Smallwood, 907 P.2d at 224 n.6.

-6-

adequately apprised the court of the factual basis for Mr. Smallwood's Fourth Amendment claim. Furthermore, petitioner's appellate counsel presented the issue to the OCCA on direct appeal. The state courts thoughtfully considered the facts underlying petitioner's Fourth Amendment claim and rejected the claim on its merits, applying the appropriate Supreme Court precedent and finding no unconstitutional detention. See Smallwood v. State, 907 P.2d 217, 224-26 (Okla. Crim. App. 1995). Under these circumstances, we agree with the district court that the rule announced in Stone bars habeas relief on this claim. See Miranda, 967 F.2d at 401; cf. Gamble v. Oklahoma, 583 F.2d 1161, 1165 (10th Cir. 1978) (finding Stone did not bar habeas review where state court refused to recognize or apply Supreme Court precedent directly on point).

## II. Failure to Grant an Evidentiary Hearing

Before the federal district court, Mr. Smallwood requested an evidentiary hearing to develop an adequate factual record regarding his ineffective assistance of counsel claims. Particularly, he wished to ferret out whether his counsel's decisions were tactical, whether his counsel failed to fully investigate and prepare mental health issues that support his defense theory and provide mitigation evidence, and whether his appellate counsel had a conflict of interest. Generally, under the AEDPA, if a petitioner has failed to develop the factual basis of his habeas claim in state court, he is not entitled to a federal evidentiary hearing

unless he initially shows: (1) the claim relies on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," 28 U.S.C. § 2254(e)(2)(A)(I), or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence," id. § 2254(e)(2)(A)(ii). The district court found that Mr. Smallwood had not met the requirements of § 2254(e)(2) and denied petitioner's request for an evidentiary hearing.

We agree with the district court that Mr. Smallwood has failed to satisfy § 2254(e)(2)'s requirements. Petitioner's ineffective assistance of counsel claims are not based on a new rule of constitutional law, and the factual basis for the claims could have been discovered with the exercise of due diligence in state court. However, in Miller v. Champion, 161 F.3d 1249, 1253 (10th Cir. 1998), we recently held that § 2254(e)(2)'s restrictions on an evidentiary hearing do not apply when the petitioner "diligently sought to develop the factual basis underlying his habeas petition, but a state court prevented him from doing so." If the Miller exception applies, petitioner is entitled to an evidentiary hearing "so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." Id.

Mr. Smallwood does not fall within the Miller exception because he did not *diligently* seek to develop the factual basis of his ineffective assistance of counsel

claims in state court. With the exception of his conflict of interest allegation, petitioner did not seek an evidentiary hearing in state court on the ineffective assistance of counsel issues before us. Moreover, petitioner failed to properly raise his conflict of interest claim before the state courts. See Smallwood v. State, 937 P.2d 111, 117 (Okla. Crim. App. 1997) (refusing to suspend application of state procedural rules for post-conviction relief to consider petitioner's pro se handwritten statement attached to his first application for post-conviction relief asserting ineffective assistance of counsel claims). Although the OCCA invited petitioner to assert his ineffective assistance of counsel claims so long as he complied with the court's procedural rules, see id., he did not do so. Under these circumstances, we cannot conclude that petitioner diligently sought to develop a factual basis for his ineffective assistance of counsel claims in state court. Accordingly, the district court did not err in denying Mr. Smallwood's request for an evidentiary hearing.

### III. Ineffective Assistance of Counsel Claims

Mr. Smallwood claims that he received ineffective assistance of trial counsel at both the guilt and sentencing stages and ineffective assistance of appellate counsel. [4] Petitioner claims his trial counsel was ineffective at the guilt

---

[4] To the extent that petitioner asserts that his counsel was ineffective at the post-conviction stage, he is not entitled to relief on this claim. Petitioner cannot successfully assert that his counsel was constitutionally ineffective at the post-

stage because he failed to present mental health evidence to support the defense theory that Mr. Smallwood lacked the capacity to commit malice aforethought murder and failed to present evidence of provocation. Mr. Smallwood also claims his trial counsel was ineffective at the penalty stage by failing to investigate and prepare mitigating social history and mental health evidence. Petitioner's ineffective assistance of appellate counsel claim is based on his appellate counsel's failure to challenge his trial counsel's performance due to an alleged conflict of interest and failure to argue that Mr. Smallwood was found competent to stand trial under an unconstitutional standard. Before addressing the merits of these claims, we must first consider the respondent's argument that they are procedurally barred.

Petitioners generally must exhaust available state court remedies before seeking redress via a federal habeas corpus petition. See 28 U.S.C. § 2254(b)(1); Demarest v. Price, 130 F.3d 922, 932 (10th Cir. 1997). Although petitioner raised an ineffective assistance of counsel claim on direct appeal, he based it on different reasons than those expressed in his habeas petition. Indeed, petitioner has not properly raised before the state courts any of the bases upon which his current ineffective assistance of counsel claims rely. Thus, petitioner has failed

conviction stage because "[t]here is no constitutional right to an attorney in state post-conviction proceedings." Coleman v. Thompson, 501 U.S. 722, 752 (1991).

-10-

to exhaust his ineffective assistance of counsel claims. See Lambert v. Blackwell, 134 F.3d 506, 517 (3d Cir. 1998) (finding ineffective assistance of counsel claim unexhausted when petitioner asserted a different basis for the claim in the state courts than presented in his habeas petition), petition for cert. filed, __ U.S.L.W. __ (U.S. Apr. 23, 1999) (No. 97-8812); Lanigan v. Maloney, 853 F.2d 40, 45 (1st Cir. 1988) (same); cf. Demarest, 130 F.3d at 938-39 (finding claims unexhausted when petitioner made general allegations of ineffective assistance of counsel in state court and more specific allegations in federal court on habeas). However, dismissal without prejudice for failure to exhaust state remedies is not appropriate if the state court would now find the claims procedurally barred on independent and adequate state procedural grounds. See Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Demarest, 130 F.3d at 939. Such is the case here.

If petitioner returned to state court to file a second application for post-conviction relief, he would be procedurally barred. Oklahoma law deems waived any claims that could have been and were not raised in a first application for post-conviction relief in a death penalty case. See Okla. Stat. Ann. tit. 22, § 1089(D)(2) ("All grounds for relief that were available to the applicant before the last date on which an application could be timely filed not included in a timely application shall be deemed waived"); see also id. § 1089(D)(8) ("[I]f a subsequent application for post-conviction relief is filed after filing an original

-11-

application, the Court of Criminal Appeals may not consider the merits of or grant relief based on the subsequent . . . application unless the application contains specific facts establishing that the current claims and issues . . . could not have been presented previously in a timely original application . . . ."); id. § 1086 (stating, inter alia, that a second post-conviction relief application cannot be based on claims that were not raised in an original, supplemental or amended application).[5]  Additionally, claims previously raised and rejected are barred by res judicata.  See id. §§ 1086, 1089(C)(1).  Mr. Smallwood's claims of ineffective assistance of counsel would be barred in state court by either res judicata or waiver.[6]  Therefore, we treat his claims as if they were exhausted because they would be procedurally barred.[7]

---

[5] We note that both § 1089 and § 1086 were effective prior to the date that Mr. Smallwood filed his application for post-conviction relief in state court.

[6] The OCCA has held that raising an ineffective assistance of counsel *claim* on direct appeal, regardless of the basis for the claim, renders all subsequent claims of ineffective assistance res judicata, even if the subsequent claims rest on different bases.  See Hooks v. State, 902 P.2d 1120, 1122 n.4 (Okla. Crim. App. 1995) ("we consider this issue – and all instances of trial counsel ineffectiveness which could have been raised but were not – res judicata for purposes of . . . post-conviction appeal.").  Therefore, petitioner's current claims of ineffective assistance of trial counsel would be barred because he raised trial counsel ineffectiveness on direct appeal.  See Smallwood, 937 P.2d at 115 n.3; id. at 118 (Lumpkin, J., concurring).

[7] Although petitioner attempted to raise his ineffective assistance of appellate counsel claim based on an alleged conflict of interest in a handwritten statement attached to his first post-conviction relief application, the OCCA held that the claim was not properly before them because it was not submitted by Mr.

We will not consider issues on habeas review "that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." English v. Cody, 146 F.3d 1257, 1259 (10th Cir. 1998) (citing Coleman, 501 U.S. at 749-50). For a state procedural ground to be independent, it must rely on state law, rather than federal law. See id. The procedural rules that would bar Mr. Smallwood's ineffective assistance of counsel claims are rooted solely in Oklahoma state law and are thus independent. A state ground will be considered adequate only if it is "'strictly or regularly followed' and applied 'evenhandedly to all similar claims.'" Duvall v. Reynolds, 139 F.3d 768, 797 (10th Cir.) (quoting Hathorn v. Lovorn, 457 U.S. 255, 263 (1982)), cert. denied, 119 S. Ct. 345 (1998). Although the prosecution has the ultimate burden of proving the adequacy of a state procedural bar, "[o]nce the state pleads the affirmative defense of an independent and adequate state procedural bar, the burden to place that defense in issue shifts to the petitioner." Hooks v. Ward, __ F.3d __, No. 98-6196, 1999 WL 502608, at *9 (10th Cir. July 16, 1999). To satisfy this burden, petitioner is, at a minimum, required to set forth specific factual allegations as to

Smallwood's counsel of record. See Smallwood v. State, 937 P.2d 111, 117 (Okla. Crim. App. 1997) (citing Okla. Stat. Ann. tit. 22, § 1089; Okla. Crim. App. R. 1.16, 3.4(E), 9.7). Thus, as to this claim, multiple procedural rules acting in concert would bar the claim. We will address this one claim separately below.

-13-

the inadequacy of the state procedure. See id. As noted by the district court, Mr. Smallwood has not challenged the adequacy of any of Oklahoma's procedural default rules. Consequently, under Hooks, petitioner has failed to carry his burden, and we may presume that the state procedural rules at issue in this case are adequate grounds for barring habeas review of his federal claims. However, this court in Hooks excused the petitioner's failure to place the adequacy of the state procedural rule in issue due to the timing of the proceedings below. See id. at *9-10. Applying the burden-shifting framework announced in Hooks likewise would be unfair to Mr. Smallwood, given that his habeas petition and supporting briefs were filed months before the Hooks decision. We will therefore consider the adequacy of the procedural default rules at issue in this case.

Although we normally view state procedural rules that bar ineffective assistance claims with a healthy degree of skepticism, see, e.g., Hickman v. Spears, 160 F.3d 1269, 1272 (10th Cir. 1998); Brecheen v. Reynolds, 41 F.3d 1343, 1363-64 (10th Cir. 1994), this does not preclude a finding that a state procedural rule is adequate to bar federal review of ineffective assistance of counsel claims. In a recent death penalty case, this court reviewed Oklahoma's procedural rule barring claims brought in a second application for post-conviction relief that could have been and were not raised in a previous application and found that the rule was adequate to bar habeas review of ineffective assistance of

-14-

counsel claims.   See Moore v. Reynolds , 153 F.3d 1086, 1097 (10th Cir. 1998), cert. denied , 119 S. Ct. 1266 (1999). [8]  With the exception of the appellate counsel conflict of interest claim that petitioner sought to raise in a supplemental pro se brief, petitioner did not raise the current ineffective assistance of counsel claims in his first application for post-conviction relief.  Consequently, we      follow Moore and find petitioner's failure to raise the factual bases for his ineffective assistance of counsel claims in his first application for state post-conviction relief precludes habeas review of these claims unless he demonstrates cause and prejudice or a fundamental miscarriage of justice.

Petitioner has failed to show cause for not raising his ineffective assistance of counsel claims in his first application for post-conviction relief.  Although

---

[8] We based our decision in    Moore  on the Oklahoma procedural bar that applies to general post-conviction relief applications, Okla. Stat. Ann. tit. 22, § 1086, rather than the later-enacted specific provisions that apply to post-conviction relief from capital sentences, Okla. Stat. Ann. tit. 22, § 1089.       See 153 F.3d at 1097.  However, the procedural bars found in § 1086 "also apply to claims raised under . . . Section 1089."    Fields v. State , 946 P.2d 266, 269 (Okla. Crim. App. 1997).  We therefore find    Moore  controlling here.

Additionally, our decision in     Moore mentions both the res judicata bar to claims previously rejected and the waiver rule for claims not previously raised. Both procedural bars are included in Okla. Stat. Ann. tit. 22, §§1086 and 1089, and both are regularly and even-handedly applied by the state courts.       See, e.g. , Fields , 946 P.2d at 268-69;   Neill v. State , 943 P.2d 145, 146 (Okla. Crim. App. 1997); Smallwood v. State , 937 P.2d 111, 114 (Okla. Crim. App. 1997);      Ross v. State , 872 P.2d 940, 941 (Okla. Crim. App. 1994).  To the extent the      Moore opinion did not specifically clarify which procedural bar it addressed, we find that both are adequate state grounds for procedural default.

attorney error amounting to constitutionally ineffective assistance of counsel constitutes "cause" for a procedural default, see Coleman, 501 U.S. at 754, petitioner cannot make such a showing here because there is no constitutional right to post-conviction counsel , see Demarest v. Price, 130 F.3d 922, 941 (10th Cir. 1997). In addition, because petitioner has failed to supplement his habeas claim with a colorable showing of factual innocence, he cannot demonstrate that our failure to review his ineffective assistance of counsel claims will result in a fundamental miscarriage of justice. See Hickman, 160 F.3d at 1275. Therefore, we conclude that all but one of Mr. Smallwood's ineffective assistance of counsel claims are procedurally barred and not subject to habeas review.

We now turn to the conflict of interest claim. As we noted above, petitioner did attempt to raise an ineffective assistance of appellate counsel claim based on an alleged conflict of interest in his first application for state post-conviction relief. However, instead of having his counsel of record address the claim in the original application, Mr. Smallwood raised the claim in a pro se handwritten statement which he attached to the application. The OCCA refused to consider Mr. Smallwood's pro se statement as part of the original application, citing its procedural rules barring consideration of supplemental pro se statements as part of a first post-conviction relief application filed by counsel. See Smallwood v. State, 937 P.2d 111, 117 (Okla. Crim. App. 1997) (citing rules).

-16-

Thus, these procedural rules, in conjunction with Okla. Stat. Ann. tit. 22, §§ 1086, 1089, prevent state court review of this ineffective assistance of appellate counsel claim. The parties have not briefed the matter of whether the Oklahoma rules that prevented the OCCA from considering Mr. Smallwood's handwritten statement are adequate for the purposes of procedural default. Given this fact, we will, like the district court, assume the rules are inadequate to bar federal habeas review of this claim. [9] Consequently, we will address the merits of this particular ineffective assistance of appellate counsel claim.

Petitioner's ineffective assistance of appellate counsel claim is governed by the familiar standards of Strickland v. Washington, 466 U.S. 668 (1984). Under the two-part Strickland test, to establish a successful ineffective assistance of counsel claim, petitioner must show: "(1) that his counsel's performance fell below an objective standard of reasonableness and (2) that the deficient performance was prejudicial to his defense." Hickman, 160 F.3d at 1273 (citing Strickland, 466 U.S. at 688, 694)). The first prong requires petitioner to overcome the "strong presumption that counsel's conduct falls within the wide

---

[9] Our holding of inadequacy is limited to the unique circumstances of this case. If the issue had been briefed, we may have handled this matter differently. We therefore leave open the question of whether the Oklahoma procedural rules which prevented consideration of petitioner's pro se statement as part of his first application for state post-conviction relief are adequate, i.e., whether they are regularly followed and evenhandedly applied to similar cases.

range of reasonable professional assistance." Strickland, 466 U.S. at 689; see also Duvall v. Reynolds, 139 F.3d 768, 777 (10th Cir.), cert. denied, 119 S. Ct. 345 (1998). Moreover, "in considering counsel's performance, we focus on 'not what is prudent or appropriate, but only what is constitutionally compelled.'" Hickman, 160 F.3d at 1273 (quoting United States v. Chronic, 466 U.S. 648, 665 n.38 (1984)). To meet the second prong, petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

At trial, Mr. Barry Albert represented petitioner. During his direct appeal, different counsel, Mr. James Dennis, represented Mr. Smallwood. Both attorneys, however, worked for the Oklahoma City Public Defender's Office. According to petitioner, Mr. Dennis' performance was constitutionally deficient because he lacked the independence to objectively review Mr. Albert's performance. To this end, petitioner alleges that the Oklahoma City Public Defender's Office had a policy prohibiting its attorneys from pursuing ineffective assistance of counsel claims against other members of the office. The record contains no evidence that such a policy existed or that petitioner's counsel was unable to objectively review his trial counsel's performance. Indeed, the record indicates that petitioner's appellate counsel aggressively raised over twenty issues on direct appeal, including an ineffective assistance of counsel claim. See Smallwood v. State, 907

-18-

P.2d 217, 238-39 (Okla. Crim. App. 1995). This belies petitioner's contention that office policy prevented his appellate counsel from bringing ineffective assistance of trial counsel claims. We therefore refuse to give any weight to this naked allegation. Accordingly, petitioner has failed to show that his appellate counsel's performance fell below an objective standard of reasonableness, and this claim has no merit.

## IV. Instructional Errors

### A. Failure to inform jury that mitigating circumstances need not be found unanimously

Petitioner next claims that the trial court violated his constitutional rights under the Eighth and Fourteenth Amendments because it failed to specifically instruct the jurors that they did not have to agree unanimously as to mitigating circumstances before considering such evidence. The relevant jury instructions provided:

> Mitigating circumstances are those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame. The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case.

Second Stage Jury Instruction No. 8, R., Vol. III at 597.

> If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, unless you also unanimously find that such aggravating circumstance or circumstances outweigh the finding of one or more mitigating

-19-

circumstances, the death penalty shall not be imposed.

Second Stage Jury Instruction No. 9, R., Vol. III at 599.

> If you unanimously find that one or more aggravating circumstances exist beyond a reasonable doubt, the law requires that you reduce such findings to writing by stating specifically which aggravating circumstances existed, if any. This finding must be made a part of your verdict.

> You must indicate this finding by checking the box next to such aggravating circumstance or circumstances on the appropriate verdict form furnished you, and such verdict must be signed by your foreman.

> The law does not require you to reduce to writing the mitigating circumstances you find, if any.

Second Stage Jury Instruction No. 10, R., Vol. III at 600.

This court has repeatedly upheld almost identical jury instructions against the same constitutional challenge raised by petitioner. See Lafevers v. Gibson, __F.3d__, No. 98-6302, 1999 WL 394508, at *12-13 (10th Cir. June 16, 1999); Newsted v. Gibson, 158 F.3d 1085, 1093 (10th Cir. 1998), cert. denied, 119 S. Ct. 1509 (1999); Duvall v. Reynolds, 139 F.3d 768, 791 (10th Cir.), cert. denied, 119 S. Ct. 345 (1998). We are bound by the decisions of prior panels, see Newsted, 158 F.3d at 1093, and circuit precedent therefore forecloses this claim.

**B. Instructions permitted jury to ignore mitigating evidence**

Petitioner also claims that the jury instructions given by the district court were unconstitutional because they permitted the jury to ignore mitigating

evidence. The challenged jury instruction states:

> Mitigating circumstances are those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame. The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case.

Second Stage Jury Instruction No. 8, R., Vol. III at 597. We rejected petitioner's argument with respect to virtually identical instructions in <u>Boyd v. Ward</u>, 179 F.3d 904, 924 (10th Cir. 1999) ("The use of the word 'may' does not alone compel the conclusion that the jury was empowered to ignore mitigating evidence. . . . There is no reasonable likelihood that the jury applied the instructions in such a way that it was prevented from considering mitigating evidence."). Consequently, petitioner is not entitled to relief on this claim.

## C. Burden of proof

Petitioner further claims that the sentencing stage instructions were unconstitutional because the trial court failed to inform the jury of the standard to be used when balancing aggravating and mitigating factors. Mr. Smallwood contends that the jury instructions must expressly state that aggravating factors must outweigh mitigating factors *beyond a reasonable doubt* in order for the jury to impose the death penalty. We disagree. In <u>Zant v. Stephens</u>, 462 U.S. 862, 875 n.13 (1983), the Supreme Court stated that "specific standards for balancing aggravating against mitigating circumstances are not constitutionally required."

-21-

Thus, petitioner's argument is without merit.

**D. Presumption of life**

Petitioner claims that the jury instructions given by the trial court were unconstitutional under the Eighth and Fourteenth Amendments because the court refused petitioner's request for a separate "presumption of life" instruction. We are not persuaded by petitioner's argument. First, petitioner has failed to cite any judicial authority, and our independent research revealed none, that the Constitution mandates a "presumption of life" instruction. In addition, we find that even if the Constitution requires a jury to be informed that a criminal defendant is entitled to a presumption of life unless the state satisfies its burden of showing that death is the appropriate penalty, the instructions given at Mr. Smallwood's trial adequately informed the jury of this fact. The trial court instructed the jury:

> The defendant, Dion A. Smallwood, has entered a plea of not guilty to the allegations of this Bill of Particulars, which casts on the State the burden of proving the material allegations in this Bill of Particulars beyond a reasonable doubt. This Bill of Particulars simply states the grounds upon which the State seeks imposition of the death penalty. It sets forth in a formal way the aggravating circumstance of which the defendant is accused. It is, in itself, not evidence that any aggravating circumstance exist[s], and you must not allow yourselves to be influenced against defendant by reason of the filing of this Bill of Particulars.

> The defendant is presumed to be innocent of the charge made against him in the Bill of Particulars, and innocent of each and every material element of said charge, and this presumption of innocence

continues unless his guilt is established beyond a reasonable doubt. If upon consideration of the evidence, facts, and circumstances in the case, you entertain a reasonable doubt of the guilt of the defendant of the charge made against him in the Bill of Particulars, *you must give him the benefit of that doubt and return a sentence of life imprisonment without parole or life.*

Second Stage Jury Instruction No. 3, R., Vol. III, at 592 (emphasis added).

Should you unanimously find that an aggravating circumstance exists beyond a reasonable doubt, you would be authorized to consider imposing a sentence of death.

If you do not unanimously find beyond a reasonable doubt that an aggravating circumstance exists, *you are prohibited from considering the penalty of death. In that event, the sentence must be imprisonment for life or imprisonment for life without parole.*

Second Stage Jury Instruction No. 4, R., Vol. III, at 594 (emphasis added).

If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, unless you also unanimously find that any such aggravating circumstance or circumstances outweigh the finding of one or more mitigating circumstances, *the death penalty shall not be imposed.*

Second Stage Jury Instruction No. 9, R., Vol. III, at 599 (emphasis added).

These instructions, in the context of the second stage jury instructions as a whole, fairly and adequately informed the jury that petitioner was entitled to a life sentence unless the jury unanimously found: (1) the state had proven the existence of one or more aggravating circumstances *beyond a reasonable doubt*; and (2) that the aggravating circumstance(s) outweighed any mitigating circumstances. We therefore hold that the trial court's refusal to give a separate "presumption of

-23-

life" instruction in this case did not violate petitioner's constitutional rights under the Eighth and Fourteenth Amendments. Cf. Turner v. Williams, 812 F. Supp. 1400, 1436 (E.D. Va. 1993) (concluding that jury instructions providing that the state had the burden of proving beyond a reasonable doubt the appropriateness of the death penalty is "essentially the same thing" as an instruction that a life sentence is presumed), aff'd, 35 F.3d 872 (4th Cir. 1994).

**E. Sympathy instruction**

During the guilt phase of petitioner's trial, the court instructed the jury that it could not consider sympathy for either the defendant or the victim in reaching its verdict. Mr. Smallwood does not challenge that instruction. At the sentencing phase of Mr. Smallwood's trial, the court explicitly told the jury that it was no longer bound by the anti-sympathy instruction. The court did so by means of the following instruction:

> All the previous instructions given you in the first part of this trial apply where appropriate and must be considered together with these additional instructions. The only exception is that, unlike what you were instructed in the first stage of this trial, you may, in your discretion, consider sympathy as a factor in your deliberations and then determine whether or not you should give any weight to such factor under all the evidence you have heard in both the first and second stages.

Second Stage Jury Instruction No. 11, R., Vol. III, at 601. Petitioner claims that the jury instruction violated his Eighth and Fourteenth Amendment rights because the court failed to "properly limit the jury's consideration and application of

-24-

sympathy to the defendant," Appellant's Br. at 52, rather than to the victim. We disagree.

We are not convinced that sympathy for victims and/or their families cannot be appropriately considered at the penalty phase to counteract defendant's mitigating evidence, provided it is based on evidence adduced at trial and the evidence produced is not so unduly prejudicial as to render the defendant's trial fundamentally unfair. Petitioner relies solely on Williams v. State, 658 P.2d 499, 501 (Okla. Crim. App. 1983), for his assertion that a sentence based on sympathy for the victim is per se unconstitutional. Williams, however, is inapposite because it does not clearly deal with the penalty phase of a bifurcated trial. In Payne v. Tennessee, 501 U.S. 808, 827 (1991), the Supreme Court stated:

> [I]f the State chooses to permit the admission of victim impact evidence and prosecutory argument on that subject [during the penalty phase], the Eighth Amendment erects no *per se* bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.

See also Booth v. Maryland, 482 U.S. 496, 517 (1987) (White, J., dissenting) ("the State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his

-25-

family." (internal citation omitted)). " Payne allows the introduction of victim impact testimony to aid the jury in making a 'reasoned moral response' when imposing sentence upon a defendant convicted of a capital offense." United States v. McVeigh, 153 F.3d 1166, 1217 (10th Cir. 1998) (quoting Penry v. Lynaugh, 492 U.S. 302, 319 (1989)), cert. denied, 119 S. Ct. 1148 (1999). At the same time, Payne does not permit the introduction of evidence so prejudicial as to violate defendant's due process rights. See Payne, 501 U.S. at 825; McVeigh, 153 F.3d at 1217.

Here, the trial court's instructions informed the jury that the weight given to the sympathy factor must be based on the evidence presented at trial. Petitioner does not direct us to any victim-impact testimony that rendered the trial fundamentally unfair. Therefore, the instruction allowing the jury to consider sympathy for the victim and/or his family did not violate Mr. Smallwood's Eighth and Fourteenth Amendment rights.

We also reject petitioner's claim that the sympathy instruction prevented the jury from considering sympathy for him. The trial court's instruction did not limit the jury's consideration of sympathy for Mr. Smallwood. Moreover, the court told the jury that it alone determined proper mitigating evidence and specifically listed information about Mr. Smallwood's background, family, and the love his family has for him as potential mitigating evidence.

## F. Life option

Petitioner claims that the jury instructions were unconstitutional because the trial court failed to instruct the jurors that they had the option of imposing a life sentence, rather than death, even if they found that the aggravating factors outweighed mitigating factors. We have, on several previous occasions, rejected this identical argument based on the same jury instruction given at petitioner's trial. See Lafevers v. Gibson, __F.3d__, No. 98-6302, 1999 WL 394508, at *11-12 (10th Cir. June 16, 1999); Johnson v. Gibson, 169 F.3d 1239, 1254 (10th Cir. 1999); Duvall v. Reynolds, 139 F.3d 768, 790-91 (10th Cir.), cert. denied, 119 S. Ct. 345 (1998). Our circuit precedent therefore precludes us from granting relief on this claim.

## G. Heinous, Atrocious, and Cruel Aggravator

Petitioner's final challenge to the jury instructions involves Oklahoma's "heinous, atrocious, and cruel" aggravating factor. Mr. Smallwood asserts that the factor is unconstitutionally vague, and that even if it is constitutional, there was insufficient evidence presented at his trial to warrant the aggravator. We have repeatedly upheld Oklahoma's "heinous, atrocious, and cruel" aggravating factor against vagueness challenges. See, e.g., Hooks v. Ward, __ F.3d __, No. 98-6196, 1999 WL 502608, at *33-34 (10th Cir. July 16, 1999); Lafevers, 1999 WL 394508, at *14-15; Duvall, 139 F.3d at 792-93.

In addition, we agree with the district court and the OCCA that there was sufficient evidence presented at petitioner's trial to support a "heinous, atrocious, and cruel" aggravator. The record contains numerous pieces of evidence upon which a reasonable juror could conclude beyond a reasonable doubt that the victim's death was preceded by "torture of the victim or serious physical abuse," Duvall, 139 F.3d at 793 (quoting Stouffer v. State, 742 P.2d 562, 563 (Okla. Crim. App. 1987)). The state court characterized the evidence as follows:

> The evidence presented, much of it in the form of Appellant's direct testimony, indicated that he arrived, uninvited, at the victim's house at approximately 4:00 p.m., ostensibly to look for his girlfriend. A quick search of the house and garage revealed that she was not there, yet Appellant did not leave until almost 2 1/2 hours later. During that time he admitted pushing the decedent backward over two tables, causing her to fall and injure herself; to destroying her telephone so she could not call the police; to punching her in the face and making her nose bleed; and to hitting her hard enough with a croquet mallet to knock her dentures from her mouth. Although Appellant claimed Frederick did not move after he hit her, and that he hit her only once, physical evidence at the scene indicated the victim bled profusely at numerous locations throughout the residence. Blood spatter evidence, and expert testimony to the same, indicated there was more than one blow with the croquet mallet. Cups located in the living room and bedroom showed bloody lip prints, suggesting the victim had been conscious enough to drink from containers at least twice before being beaten and/or bludgeoned into a state of unconsciousness, if indeed she ever reached that point. Appellant further claimed he had placed the victim in her car with her head facing the driver's side of the vehicle, and that she did not move after being placed in the car. However, photos of the crime scene showed the victim's burned body with her head and torso facing the passenger's side of the vehicle, and at least one witness to the burning testified he saw her leg move as he tried to extinguish the fire. Overall, we find there was more than sufficient evidence for the

jury to find the murder was heinous, atrocious or cruel.

Smallwood , 907 P.2d at 234-35.  The OCCA's evidentiary findings have support in the record and are not clearly erroneous, and its conclusions are not a n unreasonable application of clearly established federal law.  Mr. Smallwood is not entitled to habeas relief on this ground.

## V.  Prejudicial Photographs

During the guilt phase of petitioner's trial, the prosecution moved to admit four color photographs of the victim's charred corpse.  Defense counsel objected to the admission of the photographs, arguing that they had little or no probative value and were highly prejudicial and inflammatory.  The trial court admitted three of the photographs over defense objection but sustained the objection to the fourth and most graphic photo.  The court later admitted the fourth photo over a similar defense objection during the sentencing stage.  The OCCA upheld the trial court's evidentiary rulings regarding the admission of the photographs.        See Smallwood , 907 P.2d at 228.

Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights.        See, e.g. , Estelle v. McGuire , 502 U.S. 62, 67-68 (1991).  Accordingly, petitioner asserts that the admission of three of the photographs at the guilt phase violated his rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments and the

-29-

use of the fourth photo during sentencing violated his Eighth and Fourteenth Amendment rights.

The essence of our inquiry under the Fifth, Sixth, and Eighth Amendments, as applied to the states under the Fourteenth Amendment, is whether the admission of the photographs rendered the proceedings fundamentally unfair. See Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir.) ("[D]ue process arguments relating to the admissibility of the victims' . . . autopsy photos . . . will not support habeas relief 'absent fundamental unfairness so as to constitute a denial of due process of law.'" (quoting Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990)), cert. denied, 119 S. Ct. 378 (1998); Woods v. Johnson, 75 F.3d 1017, 1038-39 (5th Cir. 1996) (stating admission of photographs of deceased's body does not violate Eighth Amendment unless it renders the trial fundamentally unfair). "[W]e approach the fundamental fairness analysis with 'considerable self-restraint.'" Jackson, 143 F.3d at 1322 (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)). The OCCA and the district court found that the photographs were probative as to various issues at the guilt and sentencing phases. See Smallwood, 907 P.2d at 227; Dist. Ct. Mem. Op. & Order at 45-46. We do not find the OCCA ruling contrary to or an unreasonable application of Supreme Court precedent. Given the probative nature of the photographs, the gruesome character of the crime itself, and the wealth of

additional evidence supporting defendant's convictions, the admission of the photographs was not so unduly prejudicial as to render the proceedings against petitioner fundamentally unfair. See Jackson, 143 F.3d at 1322. Consequently, petitioner is not entitled to relief on this ground.

## VI. Prosecutorial Misconduct

Petitioner next claims that prosecutorial misconduct at both the guilt and penalty phases of his trial violated his constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments. The particular instances of alleged misconduct by the prosecution include:

> (1) the prosecution improperly attacked the credibility of defense counsel and presented arguments calculated to inflame the passions of the jury; (2) the prosecution combined an attack on defense counsel with a grossly improper appeal to societal alarm; (3) the prosecution improperly attacked and denigrated Mr. Smallwood; (4) the prosecution commented on acts not in evidence and improperly appealed for sympathy for the victim; and (5) the prosecution also improperly stated personal opinions, asked jurors to consider the rights of the victim, and engaged in name calling.

Appellant's Br. at 38.

Prosecutorial misconduct does not warrant federal habeas relief unless the conduct complained of is so egregious as to render the entire proceedings against the defendant fundamentally unfair. See, e.g., Donnelly v. DeChristoforo, 416 U.S. 637, 642-48 (1974); Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998), cert. denied, 119 S. Ct. 1360 (1999). The fundamental unfairness test

governs petitioner's claims under the Fifth and Sixth as well as the Eighth

Amendments.   See, e.g. , Boyd v. Ward , 179 F.3d 904, 919-20 (10th Cir. 1999)

(applying test to allegation that prosecutorial misconduct occurred during

sentencing stage);   Cummings , 161 F.3d at 618 (applying test to claim

prosecutorial misconduct deprived defendant of a fair trial);       Duvall , 139 F.3d at

794 (applying test to claim prosecutorial misconduct deprived defendant of due

process).  In making our determination, "we consider the totality of the

circumstances, evaluating the prosecutor's conduct in the context of the whole

trial."  Cummings , 161 F.3d at 618 (internal quotation marks and citation

omitted).  We have previously enunciated the contours of this inquiry:

> To view the prosecutor's statements in context, we look first at the
> strength of the evidence against the defendant and decide whether the
> prosecutor's statement plausibly could have tipped the scales in favor
> of the prosecution.  We also ascertain whether curative instructions
> by the trial judge, if given, might have mitigated the effect on the
> jury of the improper statements.  When a prosecutor responds to an
> attack made by defense counsel, we evaluate that response in light of
> the defendant's argument.  Ultimately, we must consider the probable
> effect the prosecutor's [conduct] would have on the jury's ability to
> judge the evidence fairly.

Id. (quoting  Hopkinson v. Shillinger  , 866 F.2d 1185, 1210 (10th Cir. 1989)

(internal quotation marks and citations omitted)).

On direct appeal, the OCCA carefully considered the alleged instances of

prosecutorial misconduct and concluded that none warranted post-conviction

relief, finding most of the comments were proper and the remainder of them did

-32-

not prejudice Mr. Smallwood.    See Smallwood , 907 P.2d at 228-29, 232-33.  The federal district court reached similar conclusions.

We do not find the OCCA's rulings to be an unreasonable application of constitutional law.  Even assuming that the specific instances of alleged misconduct were improper, we find, based on our careful review of the record of the entire proceedings, that none of the prosecutor's comments were of sufficient magnitude to influence the jury's decision.  In light of the considerable evidence establishing defendant's guilt and supporting the heinous, atrocious, and cruel aggravator, there is no reasonable probability that the guilt or penalty phase verdicts in this case would have been different without the alleged misconduct. Therefore, we hold that the proceedings against petitioner were not rendered fundamentally unfair by prosecutorial misconduct.    See Boyd, 179 F.3d at 920 (finding, in a death penalty case, that prosecutorial misconduct did not render proceeding fundamentally unfair in light of strong evidence of guilt and aggravating circumstances).

## VII.  Unadjudicated Crimes and Bad Acts Evidence

Mr. Smallwood argues that the introduction of other unadjudicated crimes and bad acts evidence at both the guilt and penalty phases of his trial violated his constitutional rights.  Under our circuit precedent, the introduction of unadjudicated offenses at sentencing does not violate a criminal defendant's

constitutional rights.    See, e.g. , Boyd , 179 F.3d at 922;   Johnson v. Gibson   , 169 F.3d 1239, 1252 (10th Cir. 1999);    Hatch v. Oklahoma   , 58 F.3d 1447, 1465 (10th Cir. 1995).  Consequently, petitioner's argument as it relates to the penalty phase is foreclosed, and we need only address his claim with respect to the guilt phase.

The subject of petitioner's claim at the guilt stage involves two pieces of evidence detailing other crimes and bad acts, the admission of which he claims deprived him of his right to due process.  The first piece of evidence was testimony by the victim's daughter, Terry Jo Frederick, that Mr. Smallwood had "put knives up to her."  The second piece of evidence was a letter purportedly written by the victim in which she described Mr. Smallwood as "mean and dangerous" and stated that he had pawned her TV and VCR, stolen her daughter's car, and destroyed her furniture with a knife.  Attached to the letter was a document from the Department of Public Safety showing that Mr. Smallwood had his driver's license revoked for refusing to submit to sobriety tests.  Petitioner's counsel objected to the admission of both pieces of evidence, but the trial court overruled the objection.

On habeas review, we will not disturb evidentiary findings regarding the admission of prior offenses, crimes, or bad acts evidence unless the prejudice flowing from such evidence is so great as to constitute a denial of federal constitutional rights by rendering the trial fundamentally unfair.    See Duvall , 139

-34-

F.3d at 787 . "Mistakenly admitted evidence of prior crimes or convictions can, in some instances, 'imping[e] upon the fundamental fairness of the trial itself.'" Id. at 788 (quoting United States v. Parker , 604 F.2d 1327, 1329 (10th Cir. 1979), overruled on other grounds by United States v. Pennon , 816 F.2d 527, 528 (10th Cir. 1987)). A proper instruction by the court may cure the error. See id. In this case, the trial court failed to instruct the jury to disregard the evidence. We must therefore consider the record as a whole to determine whether the admission of the prior unadjudicated bad acts evidence resulted in fundamental unfairness.

We conclude that the admission of the unsolicited comment by the victim's daughter concerning prior abuse at the hands of Mr. Smallwood and the admission of the victim's letter did not render petitioner's trial fundamentally unfair. Mr. Smallwood's own testimony established that he was abusive to the victim's daughter. The petitioner also testified on direct examination regarding information in the victim's letter and admitted to taking her daughter's car. Most importantly, petitioner's own testimony leaves no room for doubt that his actions in striking the victim with a croquet mallet, placing her in a car, and setting the car on fire caused the victim's death. In light of these admissions, we find that the evidence, even if inappropriately admitted, was not so prejudicial as to render Mr. Smallwood's trial fundamentally unfair. This is particularly true given the great disparity in seriousness between the unadjudicated bad acts, which involved

-35-

assault and theft, and the charged crime, a brutal homicide. Therefore, we conclude that, in this case, the admission of the prior bad acts evidence did not rise to the level of a constitutional violation.

## VIII. Unconstitutional Competency Standard

Mr. Smallwood's next ground for relief is that the trial court violated his due process rights by finding him competent to stand trial under an unconstitutional standard of proof. Prior to trial, petitioner's counsel filed an application for determination of competency.[10] The trial court held a hearing, ordered petitioner evaluated by a mental health professional, and, based on the psychologist's evaluation, found the petitioner incompetent to stand trial because of concerns over his ability to adequately assist his counsel. The court committed petitioner to Eastern State Hospital, where he received evaluation and treatment. After two months, a hospital doctor determined petitioner was competent to stand trial. At a hearing, petitioner and his counsel both agreed with this assessment, and the trial court adjudged Mr. Smallwood competent. Petitioner claims that the trial court violated his constitutional rights during his resumption of competency

---

[10]"A defendant is competent to stand trial if he 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [and if] he has a rational as well as a factual understanding of the proceedings against him.'" Walker v. Attorney Gen. for the State of Okla., 167 F.3d 1339, 1343 (10th Cir. 1999) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)).

hearing by requiring him to demonstrate his incompetency by a clear and convincing standard of proof, a standard later declared unconstitutional by the Supreme Court in Cooper v. Oklahoma , 517 U.S. 348, 369 (1996) (finding Oklahoma's clear and convincing standard governing post-examination competency hearings "incompatible with the dictates of due process"). [11]

This court has, on several occasions, characterized similar Cooper claims as challenging procedural, rather than substantive, due process rights. See Barnett v. Hargett , 174 F.3d 1128, 1133-34 (10th Cir. 1999); Rogers v. Gibson , 173 F.3d 1278, 1289 (10th Cir. 1999); Walker v. Attorney Gen. for the State of Okla. , 167 F.3d 1339, 1344-45 (10th Cir. 1999). "Unlike a substantive competency claim, one based upon procedural due process is subject to procedural bar." Barnett , 174 F.3d at 1134. Therefore, before addressing the merits of petitioner's Cooper claim, we turn to respondent's contention that it is procedurally barred.

As with many of his ineffective assistance of counsel claims, Mr. Smallwood failed to raise his Cooper claim in state proceedings, either on direct appeal or in his first application for post-conviction relief. Consequently, he has failed to exhaust this claim. Like the ineffective assistance of counsel claims

---

[11] Petitioner asserts both a Cooper claim and an ineffective assistance of appellate counsel claim based on counsel's failure to argue the issue on appeal. We previously found the ineffective assistance claim procedurally barred. See supra Part III.

analyzed in Part III above, though, we excuse petitioner's failure to exhaust because state courts would deny the Cooper claim on procedural grounds were petitioner required to return to the state courts to raise the issue in a second application for post-conviction relief. See Okla. Stat. Ann. tit. 22, § 1089(D)(2), (8). Similarly, for the same reasons discussed above, we find Mr. Smallwood's Cooper claim procedurally defaulted because petitioner cannot show cause and prejudice for failing to raise the claim in his first application for state post-conviction relief, nor can he show that a fundamental miscarriage of justice would result from our refusal to address the merits of this claim. [12]

Even if we were to treat Mr. Smallwood's claim as properly raised before us, it has no merit. To obtain habeas relief on a procedural competency claim, petitioner must show that "the state trial court ignored evidence that, viewed objectively, raised a bona fide doubt as to the petitioner's competency to stand trial." Walker, 167 F.3d at 1345. In conducting this inquiry, we consider

---

[12] In Barnett v. Hargett, we noted that "we have declined to apply Oklahoma's statutory procedural bar to Cooper claims not raised on direct appeal where the direct appeal predated the Supreme Court's 1996 Cooper decision." 174 F.3d at 1135 (citing Rogers, 173 F.3d at 1289-90; Walker, 167 F.3d at 1345). This case differs procedurally from those cases because petitioner filed his first application for post-conviction relief after the Supreme Court decided Cooper and after Oklahoma amended its post-conviction statute, Okla. Stat. Ann. tit. 22, § 1089, in 1995. Therefore, petitioner could have argued Cooper in his first post-conviction application and should have known he would be procedurally barred in the future if he failed to do so.

-38-

"'evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial.'" Id. at 1346 (quoting Drope v. Missouri, 420 U.S. 162, 180 (1975)). The trial court initially adjudged petitioner incompetent based on the report of Dr. Edith King, who examined petitioner and determined he was able to appreciate the nature of the charges against him but was unable to consult with his attorney or rationally assist in the preparation of his defense. Dr. King had "serious doubts about [petitioner's] ability to organize and control his thinking in a realistic manner." R., Vol. II at 263. She also reported that petitioner might be able to achieve competency with further evaluation and treatment. After two months at Eastern State Hospital, Dr. Warren Smith evaluated Mr. Smallwood and concluded he was competent to stand trial, able to trust his attorney, and prepared to return to court to face the charges against him.

While a prior adjudication of incompetence "gives rise to a rebuttable presumption of continued incompetence . . . . [the presumption] may be overcome by competent evidence." Sena v. New Mexico State Prison, 109 F.3d 652, 655 (10th Cir. 1997) (internal citations omitted). At petitioner's resumption of competency hearing, Dr. Smith's report rebutted the presumption of incompetence created by Dr. King's initial assessment. Additionally, neither petitioner nor his counsel challenged Dr. Smith's opinion as to his competency or ever again raised

-39-

the issue of competency at trial. In fact, petitioner voluntarily waived a jury trial on the issue of competency and testified that he was competent to stand trial, understood the proceeding against him, and was not on any medications. Petitioner's counsel, who had requested the initial competency evaluation, reinforced these conclusions by also testifying as to petitioner's competency. After considering this evidence and carefully reviewing petitioner's lengthy trial testimony, we find nothing that raises a bona fide doubt regarding whether, at the time of his trial, Mr. Smallwood was able to understand the proceedings against him or was able to assist his counsel in preparing a defense. See Rogers, 173 F.3d at 1290-91 (finding no evidence of petitioner's incompetency); Walker, 167 F.3d at 1345-46 (finding no bona fide doubt regarding competence when expert testimony determined petitioner to be competent and petitioner provided no evidence to the contrary). Therefore, we find that Mr. Smallwood is not entitled to habeas relief on his Cooper claim. [13]

---

[13] To the extent petitioner asserted a substantive due process claim that he was actually tried while incompetent, this claim also fails. While substantive mental incompetency claims are not subject to procedural bar, see, e.g., Rogers, 173 F.3d at 1289, petitioner cannot meet the requisite evidentiary standard. "[T]o succeed in stating a substantive incompetency claim, a petitioner must present evidence that creates a real, substantial and legitimate doubt as to his competency to stand trial." Walker, 167 F.3d at 1347 (internal quotation marks and citations omitted); accord Rogers, 173 F.3d at 1291 n.13. Petitioner's inability to meet the bona fide doubt standard mandates that he likewise cannot meet this more demanding standard. See Walker, 167 F.3d at 1347.

## IX.  Ex Parte Communications

Petitioner's final ground for relief is that his Sixth, Eighth and Fourteenth Amendment rights were violated because unrecorded ex parte communications occurred between the jury and the judge during the jury's penalty phase deliberations.  Although petitioner admits that the judge ultimately advised the attorneys of the communications in open court, he claims that the communications were nonetheless improper and cannot be considered harmless error.

An accused has a constitutional right to be present during all critical stages of his or her trial.    See Rushen v. Spain  , 464 U.S. 114, 117 (1983) (per curiam).  Thus, "[a] question from the jury must be answered in open court and only after providing counsel an opportunity to be heard."        United States v. Carter   , 973 F.2d 1509, 1515 (10th Cir. 1992).  Furthermore, if the ex parte communication between a juror and judge is improper, we will presume prejudice unless the prosecution can rebut the presumption by showing that the communication did not prejudice the substantial rights of the defendant.        See, e.g. , id.; United States v. McDonald   , 933 F.2d 1519, 1524 (10th Cir. 1991).  We find that no improper ex parte communications occurred in this case.  There is only one ex parte communication between the jury and the judge for which there is a record sufficient for us to review.  It consisted of a note the jury sent to the judge during its sentencing deliberations just before a dinner recess indicating that it was  having some

difficulty reaching a verdict and posing the question, "What will happen if we cannot reach a unanimous decision?" [14] The judge did not answer the jury's note. The prosecution and defense attorney were made aware of the note, but neither requested further clarification, suggested a response, or objected to the judge's failure to respond to the note. Under these circumstances, we fail to see how the jury's unanswered note violated petitioner's constitutional rights under the Sixth or Eighth Amendments, for there is nothing inherently disturbing or prejudicial in a juror submitting a question or request to the court.

Finally, in the district court, petitioner made a reference to Simmons v. South Carolina, 512 U.S. 154 (1994), arguing that it had a bearing on the trial court's handling of the jury contacts. In Simmons, the Supreme Court held that "[w]here the State puts the defendant's future dangerousness in issue, and the only available alternative sentence to death is life imprisonment without

---

[14] The record reflects that another question may have been asked by the jury regarding the meaning of "life without parole." The record on this question is scant, but the OCCA held "[f]rom the record before us, we can safely surmise only that an unknown question was asked, and, whether answered or unanswered, defense counsel was aware of the question and did not object to it, thereby waiving any error." Smallwood, 907 P.2d at 236-37. The court then found no plain error. See id. at 238. We are not persuaded that this ruling is contrary to federal law or based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). To the extent that petitioner argues that the lack of a record is itself indicative that improper ex parte communications occurred between the judge and jury, we find his argument devoid of merit. Petitioner's pure speculation about what did or did not occur between the judge and jury cannot form the basis of habeas relief.

-42-

possibility of parole, due process entitles the defendant to inform the capital sentencing jury – by either argument or instruction – that he is parole ineligible." 512 U.S. at 178 (O'Connor, J., concurring). [15] While petitioner made a vague argument to the district court involving Simmons and the trial judge's obligation to answer the jury's question about the meaning of a sentence of "life without parole," he has utterly failed to mention or raise any due process claim involving Simmons before us. Failure to raise an argument on appeal results in waiver of that argument. See King of the Mountain Sports, Inc. v. Chrysler Corp., __F.3d__, No. 97-1290, 1999 WL 527486, at *6 n.2 (10th Cir. July 8, 1999); State Farm Fire and Casualty Co. v. Mhoon, 31 F.3d 979, 984 n.7, (10th Cir. 1994); Ambus v. Granite Bd. of Educ., 975 F.2d 1555, 1558 n.1 (10th Cir. 1992). Therefore, we may not consider petitioner's Simmons claim.

## Conclusion

For the reasons discussed above, we conclude that Mr. Smallwood's habeas petition does not establish any instance where the state proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

---

[15] While Justice Blackmun delivered a broader holding for a four Justice plurality, Justice O'Connor's three Justice concurrence represented the narrowest grounds for a holding and, as such, represents the holding of the Court. See Marks v. United States, 430 U.S. 188, 193 (1977) (noting that the holding in a plurality decision is the position taken by Justices who concur on the narrowest grounds); Townes v. Murray, 68 F.3d 840, 849 (4th Cir. 1995) (recognizing Justice O'Connor's concurrence in Simmons as the holding of the Court).

-43-

established Federal law, as determined by the Supreme Court," 28 U.S.C. §

2254(d)(1), or "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding," id. § 2254(d)(2). Moreover, petitioner presents to us no other

grounds upon which habeas relief is warranted. Accordingly, we AFFIRM the

district court's denial of Mr. Smallwood's habeas corpus petition.