**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 2 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TERRANCE A. JAMES,

        Petitioner-Appellant,

v.

GARY GIBSON, Warden; GARY
D. MAYNARD, Director, Oklahoma
Department of Corrections,

        Respondents-Appellees.

No. 98-7139

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 92-CV-394-S)**

Gloyd L. McCoy, Coyle & McCoy, Oklahoma City, Oklahoma, for
Petitioner-Appellant.

Sandra D. Howard, Assistant Attorney General, Chief, Criminal Appeals
(W.A. Drew Edmondson, Attorney General of Oklahoma with her on the brief),
Oklahoma City, Oklahoma, for Respondents-Appellees.

Before **SEYMOUR**, Chief Judge, **ANDERSON**, and **MURPHY**, Circuit Judges.

**SEYMOUR**, Chief Judge.

Petitioner Terrance A. James was convicted of first degree murder in Oklahoma state court and sentenced to death. The Oklahoma Court of Criminal Appeals affirmed the conviction and sentence, *see James v. State*, 736 P.2d 541 (Okla. Crim. App.), *cert. denied*, 484 U.S. 970 (1987), and the denial of post-conviction relief, *see James v. State*, 818 P.2d 918 (Okla. Crim. App. 1991), *cert. denied*, 502 U.S. 1111 (1992).

Mr. James filed his initial habeas corpus petition on July 1, 1992. Pursuant to his motion, the federal district court held the habeas proceedings in abeyance pending a decision in a somewhat related 28 U.S.C. § 2255 motion challenging a federal sentence he had received for theft of government property. The district court reopened the case on October 5, 1994, following this court's affirmance of the denial of § 2255 relief. After appointment of new counsel, Mr. James filed an amended habeas petition. The district court denied habeas relief, but granted a certificate of probable cause on all issues. We affirm the district court's denial of federal habeas corpus relief.

## I.

Mr. James, Dennis Brown, and Mark Allen Berry, codefendants in a federal case involving theft of government property, were incarcerated in the Muskogee City/Federal Jail. All three had pled guilty. Mr. James and Mr. Brown believed that Mr. Berry had snitched on them and was responsible for their arrest. As they

discussed what to do to Mr. Berry, an inmate named Sammy Van Woudenberg joined in the discussion and encouraged the two to strangle Mr. Berry with a wire from a broom and then hang him to make it look like a suicide. Mr. James and Mr. Brown planned to strangle Mr. Berry while Mr. Van Woudenberg acted as a lookout.

Early the next morning, Mr. Van Woudenberg placed a piece of paper over the lens of a surveillance camera and returned to his cell. Mr. Brown asked Mr. Berry to play cards. While the two were playing, Mr. James approached Mr. Berry from behind and wrapped the wire around his neck, strangling him while Mr. Brown held Mr. Berry's feet and placed his hand over Mr. Berry's mouth. Mr. Van Woudenberg warned Mr. James and Mr. Brown that someone was coming. Mr. James dragged Mr. Berry into a cell and continued strangling him. After his body went limp, the three hung Mr. Berry's body in a shower stall.

Mr. James and Mr. Van Woudenberg were charged with and tried together for the murder. [1] Mr. James testified at both stages of trial. At the guilt stage, he admitted that he discussed killing Mr. Berry, strangled him with a wire, dragged his body into a cell and continued to strangle him, and then helped hang the body in the shower. The jury rejected Mr. James' defense of intoxication and found

---

[1]Mr. Brown pleaded guilty to second degree murder and testified for the state.

-3-

him guilty of first degree murder. At the second stage of trial, Mr. James presented mitigating evidence of his remorse, his troubled childhood, and his use of drugs. The state presented evidence of three aggravating circumstances: the murder was committed while Mr. James was imprisoned on conviction of a felony; he would be a continuing threat to society; and the murder was especially heinous, atrocious, or cruel. The jury found all three aggravators and fixed punishment at death. [2]

On appeal from the district court's denial of habeas, Mr. James asserts the following constitutional issues he believes entitle him to relief: (1) the trial court used an unconstitutional burden of proof at the competency hearing; (2) under *Ake v. Oklahoma*, 470 U.S. 68 (1985), he was improperly denied psychiatric assistance; (3) the trial court's failure to give an instruction on the lesser included offense of second degree murder denied him due process; (4) he was denied effective assistance of counsel at the sentencing stage; and (5) there was insufficient evidence to support two of the aggravators. We address each of these arguments in turn.

---

[2]The jury also found Mr. Van Woudenberg guilty of first degree murder and fixed his sentence at death.

## II.

Because the original habeas petition was filed before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), AEDPA's standards do not apply to this appeal. *See Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under pre-AEDPA law, Mr. James is entitled to relief if state court error deprived him of fundamental rights guaranteed by the Constitution of the United States. *See Fowler v. Ward*, 200 F.3d 1302, 1307 (10th Cir. 2000) (quotations and citations omitted). "We review legal issues de novo, affording deference to the state court's construction of state law. We review the federal district court's factual findings for clear error, while presuming that the state court's findings of fact are correct unless they are not fairly supported by the record." *Id.* "When the district court's findings are based merely on a review of the state record, we do not give them the benefit of the clearly erroneous standard but instead conduct an independent review." *Smallwood v. Gibson*, 191 F.3d 1257, 1264 n.1 (10th Cir. 1999).

### A. UNCONSTITUTIONAL BURDEN OF PROOF AT COMPETENCY HEARING

Mr. James first contends the trial court denied him procedural due process by applying at his competency hearing the "clear and convincing" evidence burden of proof found unconstitutional in *Cooper v. Oklahoma*, 517 U.S. 348

(1996). The state counters that Mr. James failed to exhaust this issue, that it is procedurally barred, and that, in any event, there was no constitutional violation.

Mr. James attempted to raise this claim in a pro se second post-conviction application. The Oklahoma Court of Criminal Appeals refused to accept the pro se filing because Mr. James was represented by an attorney and the attorney was required to submit the argument, *see* Okla. Stat. tit. 22, ch. 18, app., Rule 3.4(E). Although the court dismissed the application without prejudice, Mr. James did not attempt to refile with proper submission by an attorney. Thus, the state contends, the claim was not exhausted.

Exhaustion is not required if an attempt to exhaust would be futile. *See Clayton v. Gibson*, 199 F.3d 1162, 1170 (10th Cir. 1999). If Mr. James had presented a successive post-conviction application, the Oklahoma courts would have deemed the claim procedurally barred. Oklahoma bars *Cooper* claims presented for the first time in a successive post-conviction application even if, as is the case here, the direct appeal and first post-conviction application were final before *Cooper* was decided. In 1995 Oklahoma amended its post-conviction procedures to bar post-conviction relief where the claim was not raised on direct appeal unless the petitioner can show the issue "could not have been raised in a direct appeal." Okla. Stat. 22, § 1089(c)(1). Applying this standard, the Oklahoma Court of Criminal Appeals reasoned that the challenge to the clear and

convincing burden of proof *could* have been raised by a petitioner on direct appeal, even though *Cooper* had not been decided, because the legal basis for the challenge pre-dated the Supreme Court's decision. *See, e.g.*, *Scott v. State*, 942 P.2d 755, 758 (Okla. Crim. App. 1997); *Walker v. State*, 940 P.2d 509, 510 (Okla. Crim. App. 1997); *Walker v. State*, 933 P.2d 327, 338-39 (Okla. Crim. App. 1997). Presentation of this claim to the Oklahoma courts would thus have been futile, and Mr. James' failure to exhaust should be excused. *See Clayton*, 199 F.3d at 1170.

Even if failure to exhaust is excused, however, procedural competency claims may otherwise be procedurally barred. *See Rogers v. Gibson*, 173 F.3d 1278, 1289 (10th Cir. 1999), *cert. denied* 120 S. Ct. 944 (2000). Thus, a claim that has been defaulted in state court on an adequate and independent state ground will be considered on federal habeas review only if the petitioner shows cause and prejudice to excuse the default or shows a fundamental miscarriage of justice will result if the claim is not considered. *See Clayton*, 199 F.3d at 1170-71. "To be adequate, a state's procedural rule must have been firmly established and regularly followed when the purported default occurred." *Id.* at 1171.

The 1995 Oklahoma statutory amendments "greatly circumscribed" the court's power to apply intervening changes in the law to post-conviction applicants. *Valdez v. State*, 933 P.2d 931, 933 n.7 (Okla. Crim. App. 1997).

Prior to the amendments, Oklahoma law would not have barred Mr. James from challenging the clear and convincing standard for the first time in a post-conviction application. *See Rogers*, 173 F.3d at 1290. Mr. James filed his direct appeal and application for post-conviction relief in the state courts in the 1980s. Therefore, his purported default occurred well before the 1995 amendments. We have made clear that a defendant cannot be expected to comply with a procedural rule that did not exist at the time of the purported default. *See Walker v. Attorney General*, 167 F.3d 1339, 1343-44 (10th Cir.), *cert. denied*, 120 S. Ct. 449 (1999); *see also Rogers*, 173 F.3d at 1290. Consequently, the 1995 amendments are not an adequate state ground in this case for procedural default, and Mr. James' failure to challenge the clear and convincing evidence standard on direct appeal or in his first post-conviction application does not bar federal habeas review of the claim. *See id.*

In order to prevail on a procedural competency claim, a petitioner must establish a "'bona fide doubt as to his competency'" at the time of trial. *Wallace*, 191 F.3d at 1242 (quoting *Barnett*, 174 F.3d at 1135).[3] Mr. James was not competent to stand trial if he lacked "sufficient present ability to consult with his

_____

[3]Although the trial court held a competency hearing, its competency determination is not entitled to a presumption of correctness because it used an unconstitutional standard of proof; it is as if no competency hearing was held at all. *See Wallace v. Ward*, 191 F.3d 1235, 1242 (10th Cir. 1999) (citing *Barnett v. Hargett*, 174 F.3d 1128, 1135 (10th Cir. 1999)); *Walker*, 167 F.3d at 1345.

lawyer with a reasonable degree of rational understanding," and did not have "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (quotation omitted). "Evidence of irrational behavior, demeanor at trial, and prior medical opinion regarding competence are relevant to a bona fide doubt inquiry." *Wallace*, 191 F.3d at 1243.

The record does not persuade us there was a bona fide doubt regarding Mr. James' competence to stand trial. The defense's own witness, Dr. Garcia, testified that he had observed and evaluated Mr. James over a seventeen day period during which Mr. James was a patient at Eastern State Hospital. Dr. Garcia observed no organic brain syndrome at the time and diagnosed Mr. James with a schizoid personality disorder which only slightly affected his decision making ability. In Dr. Garcia's opinion, Mr. James was competent, able to comprehend the nature of the charges and proceedings against him, and capable of assisting his legal defense. Based on Dr. Garcia's testimony, the trial court found Mr. James competent. Dr. Ruedi, who did not testify but who examined Mr. James for competency, also concluded he had an adequate factual and rational understanding of the charges and the possible outcome of a guilty verdict, could assist in the preparation of his defense, and was competent.

There was no evidence that Mr. James' competency changed from the time of the competency hearing to the time of trial, at which he testified during both stages. *See Drope v. Missouri*, 420 U.S. 162, 181 (1975). Mr. James was lucid, understood the charges against him, and participated in his own defense. *See Nguyen v. Reynolds*, 131 F.3d 1340, 1346 (10th Cir. 1997). The record indicates he responded coherently, logically, and responsively to the questions asked. *See Foster v. Ward*, 182 F.3d 1177, 1191 (10th Cir. 1999), *cert. denied* 120 S. Ct. 1438 (2000). He did not engage in the sort of irrational or unusual behavior during trial which would lead the court to question his competency. *See Bryson v. Ward*, 187 F.3d 1193, 1204 (10th Cir. 1999), *cert. denied*, No. 99-8086, 2000 WL 157210 (U.S. Apr. 3, 2000). Moreover, the trial court, having ample opportunity to assess Mr. James' ability to understand the proceedings and assist counsel, did not indicate any concerns about his competency. *See Foster*, 182 F.3d at 1191. Because Mr. James has failed to show a bona fide doubt regarding his competence, his procedural competency claim fails.

## B.     PSYCHIATRIC ASSISTANCE

Mr. James relies on *Ake v. Oklahoma*, 470 U.S. 68 (1985), to argue he should have been provided psychiatric assistance to aid his defense at trial with

regard to competency, insanity, and mitigation of punishment.[4] He believes his mental condition and neurological dysfunctions were relevant to intent at the first stage of the trial and to mitigation at the second stage.

On direct appeal, the Oklahoma Court of Criminal Appeals addressed this issue only as to the first stage, although Mr. James raised it as to both stages. The court determined Mr. James' case was distinguishable from *Ake* because he failed to demonstrate to the trial judge that his sanity at the time of the offense would be a significant factor at trial, instead relying on the contention he was under the influence of drugs at the time of the offense. *See James*, 736 P.2d at 543. The federal district court denied relief on this issue because Mr. James did not formally request psychiatric assistance, and because he did not make an initial showing that his sanity was at issue. The district court also found nothing in the record indicating a need for psychiatric testimony to rebut the aggravating evidence.

Mr. James first contends he did make a request for psychiatric assistance, but it was turned down by the trial court. Mr. James' trial counsel testified at the post-conviction evidentiary hearing that he talked to the trial judge ex parte about

---

[4]Because the Supreme Court decided *Ake* while Mr. James' case was pending on appeal, application of *Ake* presents no retroactivity problem. *See Johnson v. Gibson*, 169 F.3d 1239, 1245 (10th Cir.), *cert. denied*, 120 S. Ct. 415 (1999).

obtaining expert assistance, but he did not file a formal motion because there was no legal entitlement to an expert prior to *Ake*. Because it was futile to make such a motion, we assume counsel's ex parte request was sufficient.

In a case such as this where *Ake* was not available at trial but was available at the time of direct appeal, the proper standard to determine whether a petitioner is entitled to psychiatric assistance is whether he could have made a showing that his sanity or mental state at the time of the offense would be a significant factor at trial. *See Castro v. Oklahoma*, 71 F.3d 1502, 1513 (10th Cir. 1995); *Liles v. Saffle*, 945 F.2d 333, 336 (10th Cir. 1991). This standard applies both to the guilt and penalty phases of a capital trial. *See* Rogers, 173 F.3d at 1284. If mental capacity or insanity defenses are asserted at the first stage, a petitioner must clearly establish the defense as a genuine and real issue. *See Liles*, 945 F.2d at 336; *see also Castro v. Ward*, 138 F.3d 810, 826 (10th Cir. 1998) ("An indigent defendant requesting appointment of an . . . expert bears the burden of demonstrating with particularity that such services are necessary to an adequate defense.") (quotations omitted). A petitioner's mental state must be in doubt, debatable, or a close question. *See Liles*, 945 F.2d at 336. At the sentencing phase, an expert must be appointed if the state presents any evidence of the defendant's continuing threat to society and the defendant establishes that his

mental state could be a significant mitigating factor. *See Rogers*, 173 F.3d at 1284; *Castro,* 71 F.3d at 1513.

We analyze this issue by looking at the evidence available both at the time of trial and thereafter. *See Moore v. Reynolds*, 153 F.3d 1086, 1109 (10th Cir. 1998). Nothing in the trial record indicated Mr. James' sanity at the time of the offense would be a significant factor at the guilt phase of trial. While the failure to assert an insanity defense will not alone defeat an *Ake* claim, it is relevant when considering whether a trial court should have recognized insanity was likely to be a significant factor at trial. *See Rogers*, 173 F.3d at 1285.

Oklahoma follows the M'Naghten test of legal insanity, requiring the defendant to show that at the time of the crime he suffered from "a mental disease or defect rendering him unable to differentiate between right and wrong, or unable to understand the nature and consequences of his actions." *Jones v. State*, 648 P.2d 1251, 1254 (Okla. Crim. App. 1982). The record does not show Mr. James was unable to understand the nature and consequences of his acts or differentiate between right and wrong. The bulk of the evidence regarding Mr. James' mental state at the time of the crime went to the fact that he was intoxicated because he had taken several pills of at least two types of prescription drugs. This alleged temporary, voluntary intoxication does not constitute the mental defect required for a valid insanity defense. *See id.* Mr. James' behavior

-13-

during the court proceedings was normal and gave no indication that he might be suffering from psychiatric problems.

Mr. James' application for determination of competency did not indicate that sanity would be an issue. His medical records from Eastern State Hospital, where he was admitted for a competency evaluation, do not indicate he was insane at the time of the murder. Dr. Garcia, who examined Mr. James for competency, did not find him incompetent to stand trial, nor did he mention any issue regarding sanity. Dr. Ruedi, a clinical psychologist, noted Mr. James had difficulty concentrating and tremulousness consistent with withdrawal from substances. She also concluded Mr. James was competent to stand trial.

Dr. Rice, a defense expert witness, testified that the ingestion of the particular drugs could have caused Mr. James to remain conscious with impaired thought processes, judgment, and motor coordination. However, three State's witnesses testified that at the time of the murder Mr. James was not stumbling or staggering, did not have slurred speech, and did not appear to be intoxicated by drugs. Moreover, this testimony regarding intoxication is not relevant to Mr. James' sanity.

Nor does the new evidence available after trial assist Mr. James with respect to this claim. Although he testified at trial that he did not remember much of the murder because of his intoxication, he later testified at the post-

conviction evidentiary hearing that he did not black out during the murder and that he knew what happened but was not in control of his mind. Trial counsel testified at the post-conviction hearing that he did not raise an insanity defense based on Dr. Garcia's opinion that Mr. James did not have organic brain syndrome. Counsel testified it would have been helpful to have had a psychiatric expert (apparently in addition to Dr. Rice) testify on Mr. James' behalf, but did not indicate in retrospect that he would have raised an insanity defense.

An affidavit of Dr. Phillip Murphy, Ph.D., prepared more than nine years after the murder, indicated there was "reason to believe" Mr. James suffered from brain damage at the time of the crime, had significant intellectual deterioration and memory disorder, and had temporal lobe epilepsy while under the influence of drugs. Dr. Murphy believed there was "evidence" Mr. James was under the influence of drugs at the time of the murder and because of "possible" brain damage was unable to comprehend his actions totally. Dr. Murphy also believed a full neuropsychological evaluation would provide evidence indicating whether the brain damage could have influenced Mr. James' culpability for the crime. Dr. Murphy's carefully worded affidavit does not create a serious doubt regarding Mr. James' sanity at the time of the murder more than nine years earlier.

A deposition of Joy Carol Lee Keithley, Mr. James' ex-mother-in-law, indicated that the day after the murder his words were slurred and she could not

understand what he was saying. She believed he acted as if he was on drugs. This is not persuasive evidence in light of Dr. Murphy's testimony that Mr. James would have been under the influence of the drugs for approximately thirteen hours. Ms. Keithley talked with Mr. James more than twenty-four hours after he took the medication, so his alleged state of intoxication at that time is not relevant.

Considering all of the evidence, we do not believe Mr. James could have made a showing that insanity or his mental state would be a significant factor at the first stage of trial. Consequently, he was not entitled to expert assistance at the guilt stage.

In order to be entitled to appointment of a psychiatric expert at the sentencing phase, Mr. James must establish his mental condition was likely to be a significant mitigating factor. *See Rogers*, 173 F.3d at 1285. Although the State presented evidence that Mr. James was a continuing threat to society, it did not present psychiatric evidence to support this aggravating circumstance. The State instead focused on the circumstances of the murder, on Mr. James' threats to inmates who witnessed the murder, and on the fact that Mr. James possessed a homemade weapon in jail. Psychiatric evidence was not needed to rebut this continuing threat evidence.

Mr. James' second stage defense did not rely on mental health evidence. Rather, he presented evidence of his remorse, his troubled childhood, his prior use of drugs, and Mr. Van Woudenberg's influence on him. Trial counsel testified at the post-conviction evidentiary hearing that his strategy did not include introduction of mental health evidence because there was no evidence Mr. James suffered from organic brain syndrome at the time of the murder. [5] Dr. Murphy's affidavit did not address whether Mr. James would be a continuing threat. We hold that Mr. James has failed to meet the threshold showing his mental condition could have been a significant factor at sentencing.

Even if Mr. James was entitled to psychiatric assistance, failure to provide that assistance is subject to harmless error analysis. *See id.*; *Castro*, 71 F.3d at 1515-16. Error is harmless if it did not have a substantial or injurious effect or influence on the jury's verdict. *See Castro*, 138 F.3d at 829 (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The error was not harmless at the second stage if we are left with a significant doubt that the evidence would have caused at least one juror to choose life rather than death. *See Moore*, 153 F.3d at 1110.

---

[5]There was some evidence that Mr. James had suffered from such a syndrome in 1974, but doctors found no evidence that he continued to suffer from it at the time of the murder.

Any error with respect to the first stage of Mr. James' trial is harmless because no evidence suggested he could have asserted an insanity defense. In the second stage, the jury was presented with evidence of the callous nature of the murder as well as Mr. James' threats, possession of a weapon, and felony conviction. At best, a psychiatric expert *may* have testified to the possibility that Mr. James *may* have suffered from some type of neurological dysfunction that *may* have impaired his judgment. However, none of the doctors who examined Mr. James at the time of trial came to this conclusion, even those secured by the defense. We are not left with significant doubt that this potential evidence would have outweighed the significant evidence in support of the continuing threat aggravator such that even one juror would have voted against imposing the death sentence.

## C. LESSER INCLUDED OFFENSE INSTRUCTIONS

Mr. James cites *Beck v. Alabama*, 447 U.S. 625 (1980), to support his claim that he was denied a fair trial and due process because the trial court failed to instruct the jury on the lesser included offense of second degree murder. *Beck* held that a trial court must instruct the jury in a capital case on a lesser included noncapital offense if the evidence would support giving such an instruction. *See id.* at 627. The *Beck* requirement is satisfied so long as the jury had the option of

at least one lesser included offense, even if there are other lesser included offenses also supported by the evidence. *See Schad v. Arizona*, 501 U.S. 624, 645-46 (1991); *Paxton v. Ward*, 199 F.3d 1197, 1205 (10th Cir. 1999) (citing *Hooks*, 184 F.3d at 1225). Because the trial court here instructed the jury on the lesser included offense of first degree manslaughter, the *Beck* requirement was satisfied.

Mr. James also argues that Oklahoma decisional law required the trial court to instruct the jury on all degrees of homicide which the evidence tended to prove, even when such instructions were not requested. *See, e.g.*, *Walton v. State*, 744 P.2d 977, 978 (Okla. Crim. App. 1987); *Mayberry v. State*, 238 P.2d 362, 366-67 (Okla. Crim. App., 1951). A federal court may not issue the writ of habeas corpus on the basis of a perceived error of state law, *see Pulley v. Harris*, 465 U.S. 37, 41 (1984), absent a determination that the state law violation rendered the trial fundamentally unfair, *see Boyd v. Ward*, 179 F.2d 904, 916 (10th Cir.1999). Oklahoma law defines second degree murder as a killing "evincing a depraved mind . . . although without any premeditated design . . . ." Okla. Stat. tit. 21, § 701.8(1). The evidence introduced at trial, including Mr. James' own testimony, indicated that Mr. James, Mr. Brown, and Mr. Van Woudenberg discussed the killing in advance, obtained the murder weapon in advance, and arranged for Mr. Brown to lure Mr. Berry out of his cell by asking

him to play cards.  Under these circumstances, it was not fundamentally unfair for the trial court to conclude an instruction on second degree murder was unwarranted.  *See Boyd v. State*, 839 P.2d 1363, 1367 (Okla. Crim. App. 1992).

## D.    INEFFECTIVE ASSISTANCE OF COUNSEL

Ineffective assistance of counsel claims are mixed questions of law and fact.  *See, e.g.*, *Williamson v. Ward*, 110 F.3d 1508, 1513 (10th Cir. 1997).  To obtain habeas relief on these claims, a petitioner must establish both that his attorney's representation was deficient and that he was prejudiced by that deficiency.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To succeed on the deficiency prong, a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* at 689 (quotation omitted).  Judicial scrutiny of counsel's performance is highly deferential.  *See id.*  Where counsel's alleged errors occurred during a capital sentencing proceeding, the prejudice inquiry is "whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."  *Id.* at 695; *see also Cooks v. Ward*, 165 F.3d 1283, 1296 (10th Cir. 1998) (reviewing court should consider strength of

government's case and aggravating circumstances along with mitigating factors that might have been presented).

### 1. Dr. Garcia's letter

Mr. James argues his trial counsel's failure at the sentencing phase to present a letter from Dr. Garcia, which indicated Mr. James would not be a continuing threat to society, constituted ineffective assistance of counsel. Mr. James first raised this claim in a post-conviction proceeding, and the Oklahoma Court of Criminal Appeals determined it was procedurally barred. *See James*, 818 P.2d at 920.

As a matter of state law, "Oklahoma generally bars review in postconviction proceedings of ineffective assistance of trial counsel claims not raised on direct appeal." *Hooks v. Ward*, 184 F.3d 1206, 1213 (10th Cir. 1999) (citing Okla. Stat. Ann. tit. 22, § 1086). This particular state procedural bar is adequate to preclude habeas review here because Mr. James had different attorneys at trial and on direct appeal and his ineffective assistance claim could have been reviewed from the trial record alone. *See English v. Cody*, 146 F.3d 1257, 1264 (10th Cir. 1998). We will therefore consider this claim only if Mr. James demonstrates cause and prejudice or a fundamental miscarriage of justice. *See id.* at 1259.

Without elaboration, Mr. James urges us to remand to the district court to allow him to raise ineffective assistance of appellate counsel as cause excusing this default. [6] Even if this request were somehow sufficient to show cause, Mr. James has not shown prejudice by trial counsel's failure to introduce the letter as evidence. Introduction of the letter would have permitted the State to call Dr. Garcia as a witness. Counsel did not want Dr. Garcia to testify at sentencing because he believed Dr. Garcia would have made a strong statement there was nothing wrong with Mr. James. This testimony would have conflicted with the thrust of Mr. James' defense at both stages of the proceedings that his emotional problems, turbulent childhood, history of drug abuse, and voluntary intoxication on the night of the murder diminished his culpability. The failure to introduce the letter was thus sound, although unsuccessful, strategy. "To counteract the natural tendency to fault an unsuccessful defense, a court reviewing a claim of ineffective assistance must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Nix v. Whiteside*, 475 U.S. 157, 165 (1986) (quoting *Strickland*, 466 U.S. at 689). Mr. James does not overcome this presumption. The jury was presented with ample evidence to

---

[6]Mr. James also argues this claim cannot be procedurally barred because the State did not cross-appeal from the district court's ruling that it could consider the claim on its merits. We recently rejected this argument in *Jones v. Gibson*, No. 98-6370, 2000 WL 161336, at *7 n.4 (10th Cir. Feb. 15, 2000).

support the continuing threat aggravator. We cannot say that counsel's tactical decision not to admit the letter would have changed the outcome. Because Mr. James has failed to show a fundamental miscarriage of justice, we conclude this claim is procedurally barred.

   2.   *Failure to investigate and present mitigating evidence*

Mr. James argues his counsel was ineffective during the sentencing phase for failing to investigate and present a proper case for mitigation. [7] The federal district court found this claim procedurally barred but also considered it on its merits and determined Mr. James failed to show counsel's strategy at the sentencing hearing was unreasonable. The State does not argue procedural bar, even though the Oklahoma Court of Criminal Appeals held the claim barred, *see James*, 818 P.2d at 920. In light of the State's waiver, this court may consider the claim on its merits without addressing procedural bar. *See Moore*, 195 F.3d at 1178.

_____

   [7]Mr. James also argues his attorney was ineffective for making a very brief opening argument at the sentencing phase. In light of the scant mitigating evidence presented, this short opening statement may have been a tactical decision. Indeed, our cases establish that failure to make *any* opening statement at this stage may be a tactical decision. *See Nguyen*, 131 F.3d at 1350. In any event, Mr. James fails to assert how he was prejudiced by this allegedly deficient performance.

Mr. James faults his attorney for failing to call several of his relatives to testify about his turbulent childhood, his problems with drugs, and their love for him. Counsel has a duty to conduct a reasonable investigation for mitigating evidence or to make a reasonable decision that particular investigation is unnecessary. *See, e.g.*, *Stouffer v. Reynolds*, 168 F.3d 1155, 1167 (10th Cir. 1999). In a capital case, an attorney's duty to investigate all possible lines of defense is strictly observed. *See Boyd v. Ward*, 179 F.3d 904, 915 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 1188 (2000). "Where available mitigating evidence is not presented, this court focuses on the reason for the decision not to present the evidence." *Wallace*, 191 F.3d at 1247. The reasonableness of counsel's actions not to present evidence may be determined or influenced by the petitioner's actions or statements. *See Strickland*, 466 U.S. at 691.

At the post-conviction hearings, counsel testified, contrary to Mr. James' assertion, that he talked to Mr. James about his family and his background. Although he spoke to Mr. James' father and grandparents on several occasions, he did not ask them to testify. Counsel testified that the father was antagonistic toward Mr. James and would not have made a sympathetic witness. He also testified that the grandfather was old and in poor health, and that Mr. James requested he not be called as a witness. Counsel could not recall his reasons for not calling the grandmother. He did ask Mr. James if there were other people

-24-

who could testify in mitigation. Mr. James gave him no names, however, and counsel left it up to Mr. James to decide what family members to call. Based upon our independent review of the state court record, *see Smallwood*, 191 F.3d at 1264 n.1, we conclude counsel's failure to investigate or present other evidence was directly influenced by Mr. James. The failure to present witnesses to testify concerning a defendant's childhood need not constitute deficient performance. *See Parks v. Brown*, 840 F.2d 1496, 1509 (10th Cir. 1987), *rev'd on other grounds*, 494 U.S. 484 (1990). Under the circumstances here, we conclude counsel's performance was not deficient.

Even if counsel's performance was deficient in this regard, Mr. James has not shown prejudice. Much of the evidence he now points to was already before the jury. At the guilt stage, he testified regarding his problems with drugs. At the punishment stage, he testified about his disruptive home life, his drug problem since the age of twelve, his hospitalization for the drug problem, his lack of prior felony convictions, his remorse, and his young son. Given the aggravating evidence, there is no reasonable probability the additional and largely cumulative mitigating evidence would have caused the jury to reach a different result. *See Castro*, 138 F.3d at 832; *Moore*, 153 F.3d at 1099.

**E.     SUFFICIENCY OF THE EVIDENCE TO SUPPORT AGGRAVATING CIRCUMSTANCES**

*1.      "Serving a sentence" aggravator*

Mr. James contends there is insufficient evidence to support the aggravating circumstance that "[t]he murder was committed by a person while serving a sentence of imprisonment on conviction of a felony."  Okla. Stat. tit. 21, § 701.12(6).  At the time of the murder, Mr. James had pled guilty to a federal felony but had not been sentenced.  He thus maintains he was not "serving a sentence" as required by the statute.

The federal district court assumed the issue was not procedurally barred and determined that a rational trier of fact could have found the existence of this aggravator beyond a reasonable doubt.  Citing Black's Law Dictionary 301 (5th ed. 1979) and  *Boykin v. Alabama* , 395 U.S. 238, 242 (1969), the court pointed out that a guilty plea is a conviction.  Because Mr. James had pled guilty to a federal offense, the district court determined he had been convicted of a felony.  Mr. James asserts the district court failed to consider whether he was "serving a sentence."

The State argues this claim is procedurally barred because it was first raised on post-conviction review and the Oklahoma Court of Criminal Appeals found it could have been raised on direct appeal.      *See James* , 818 P.2d at 920.  Mr. James counters that the court actually addressed this issue on its merits when,

after invalidating the "heinous, atrocious or cruel" aggravating circumstance, it stated "our appellate review, including a reweighing of the remaining valid aggravating circumstances and the mitigating evidence, reveals that sufficient evidence existed to support the remaining aggravating circumstances beyond a reasonable doubt . . . ."  *Id.* at 923.  If the state court did address the issue on the merits, state procedural bars will not preclude federal habeas review.  *See Hooks*, 184 F.3d at 1215.

Although we are uncertain of its exact review, the Oklahoma Court of Criminal Appeals on both direct appeal and on post-conviction review considered only very generally whether the evidence supported the aggravating factors.  The issues presented on mandatory sentence review and on reweighing are in a different legal posture than a claim of insufficient evidence to support an aggravator.  Although mandatory sentence review applies in all capital cases,  *see* Okla. Stat. tit. 21, § 701.13(C), it does not take into consideration every possible attack on the aggravating circumstances.  *Cf. Medlock v. Ward*, 200 F.3d 1314, 1320 n.3 (10th Cir. 2000) (mandatory sentence review "does not represent a full reweighing of aggravating and mitigating factors").  On post-conviction review, the court expressly and unambiguously declined to address the issue as procedurally barred.  *See Harris v. Reed*, 489 U.S. 255, 263 (1989).  We conclude, contrary to Mr. James' argument, that the Oklahoma Court of Criminal

-27-

Appeals did not address the merits of this issue on either direct appeal or post-conviction review.

"On habeas review, this court does not address issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *English*, 146 F.3d at 1259 (citing *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991)). Mr. James makes no attempt to demonstrate either cause or a fundamental miscarriage of justice. Accordingly, we need not address this claim.

In any event, we are not persuaded the claim has merit. In contending there is insufficient evidence to support this aggravator, Mr. James faults the state court for broadening the aggravator beyond the words of the statute to include a murder committed by a prisoner after pleading guilty and while awaiting sentencing. Our review of a challenge to the state's interpretation of an aggravating factor is quite limited. "As the Supreme Court has made clear, unless the aggravator is unconstitutionally vague on its face, or otherwise impedes the requirement that sentencing determinations be individualized, states are free to select whatever substantive criteria they wish to determine who is eligible for the death penalty." *Davis v. Executive Dir. of Dep't of Corrections*, 100 F.3d 750, 771 (10th Cir. 1996). A federal court is bound by a state court's interpretation of the state's

aggravator. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *see also Manlove v. Tansy*, 981 F.2d 473, 478 (10th Cir. 1992).

This is not a case where the state court's interpretation of the aggravator is overbroad. *See Cartwright v. Maynard*, 822 F.2d 1477, 1485 (10th Cir. 1987) (aggravator cannot be defined and applied so broadly that it conceivably could cover every first degree murder), *aff'd*, 486 U.S. 356 (1988). Rather, the interpretation sufficiently narrows the eligible class to those who are imprisoned, and thereby satisfies constitutional requirements. *Cf. Tucker v. Zant*, 724 F.2d 882, 896-97 (11th Cir. 1984) (refusing to second-guess state court's interpretation which narrowed class of persons eligible for death penalty). Because Mr. James cannot make a compelling argument that the Oklahoma court's interpretation violates constitutional requirements, we will not second-guess the interpretation.

The evidence here was uncontroverted that at the time of the murder Mr. James was incarcerated after pleading guilty to a felony. Under the Oklahoma court's interpretation, therefore, a rational factfinder could have found this aggravator beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("[A]fter viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the aggravating circumstance beyond a reasonable doubt.").

### 2.  *Continuing threat aggravator*

The existence of the "continuing threat" aggravator was supported by evidence that Mr. James had a homemade weapon in prison, showed a lack of remorse over the killing, and threatened other inmates.  The jury was also instructed to consider the callousness of the crime and Mr. James' criminal history.  Mr. James contends this evidence is not sufficient to demonstrate a propensity toward future violent conduct.  He points out that he was originally incarcerated for a nonviolent offense and has perpetrated no further violent acts while in prison.  We review this claim under the "rational factfinder" standard. *See id.*

A defendant's criminal history, the callousness of the crime, and his threats against others are among the factors which may be considered in determining if there was sufficient evidence to support the continuing threat aggravator.       *See Medlock*, 887 P.2d at 1349.  The most compelling evidence supporting continuing threat can come from the facts surrounding the murder itself.       *See Johnson v. State*, 928 P.2d 309, 317 (Okla. Crim. App. 1996);       *Cooks*, 165 F.3d at 1289. Because a person who acts with utter disregard for human life likely will do so again, attitude is an important factor.       *See id.*  As the district court determined

here, there was evidence that the murder was callous. *See* Tr. vol. II at 1147 (admitting killing was "for the hell of it"); *James*, 736 P.2d at 546 (finding, on direct appeal, that Mr. Berry's death was painful and not swift).

Contrary to Mr. James' contention, a pattern of criminal activity is not required to prove this aggravator. *See Malone v. State*, 876 P.2d 707, 718 (Okla. Crim. App. 1994) (citing cases upholding aggravator based on callousness of murder alone without showing of pattern of conduct). In any event, the jury was presented with evidence that Mr. James possessed homemade weapons and threatened other inmates. These episodes could establish a pattern of or propensity toward violent conduct. After viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the continuing threat aggravator beyond a reasonable doubt. [8]

## III.

We have considered all of Mr. James' arguments on appeal, including those not specifically addressed, and are not persuaded constitutional error infected his trial. We **AFFIRM** the district court's denial of habeas corpus relief.

---

[8]Mr. James also asserts the continuing threat aggravator is unconstitutional on its face and as applied. We have repeatedly rejected this argument, *see, e.g.*, *Hooks*, 184 F.3d at 1238-39; *Castro*, 138 F.3d at 816-17; *Nguyen*, 131 F.3d at 1353-54, and we are bound by these decisions, s *ee Foster*, 182 F.3d at 1194.