**F I L E D**

**UNITED STATES COURT OF APPEALS**

**February 22, 2007**

**TENTH CIRCUIT**

LELYN EDWARD BODINE,

Petitioner-Appellant,

v.

THE WARDEN OF JOSEPH HARP
CORRECTIONAL CENTER,

Respondent-Appellee.

No. 06-6264

(W.D. of Okla.)

(D.C. No. CV-05-1164-M)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **TACHA**, Chief Judge, **HARTZ**, and **TYMKOVICH**, Circuit Judges.[**]

Lelyn Bodine, an Oklahoma state prisoner appearing *pro se*, seeks a

certificate of appealability (COA) to challenge the district court's denial of his

petition of a writ of habeas corpus under 28 U.S.C. § 2254. We reject Bodine's

request for a COA.

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

## I. Background

An Oklahoma jury convicted Bodine of eleven counts of Lewd Acts with a Minor, and recommended he serve the maximum 20-year prison term on each count. At sentencing, the court ordered Bodine to serve all eleven 20-year terms consecutively. On direct appeal, Bodine asserted nine grounds for relief, including the constitutional claims he now brings before this court. The Oklahoma Court of Criminal Appeals (OCCA) affirmed Bodine's conviction and sentence on direct appeal. Bodine does not appear to have sought post-conviction relief in the Oklahoma state courts.[1]

Bodine filed a petition for a writ of habeas corpus in the district court alleging the following claims of error: (1) his direct appeal was fundamentally unfair; (2) trial counsel was ineffective for failing to question the prosecutor about the prosecutor's interviews with the victim; (3) deprivation of due process based on two instances of prosecutorial misconduct—making a false statement before the jury and concealing potentially exculpatory evidence; and (4) the trial

---

[1] The exhaustion requirements of 28 U.S.C. § 2254 do not require Bodine to seek post-conviction relief in state court prior to filing his federal habeas petition, provided the state court had the opportunity to rule on the substance of his federal claim. "[O]nce the state courts have ruled upon a claim, it is not necessary for a petitioner 'to ask the state for collateral relief, based upon the same evidence and issues already decided by direct review.'" *Castille v. Peoples*, 489 U.S. 346, 350 (1989) (quoting *Brown v. Allen*, 344 U.S. 443, 448–49 n.3 (1953)).

court impermissibly had an *ex parte* communication with the jury after it rendered the verdict but prior to sentencing.

In its 16-page Report and Recommendation, the magistrate judge carefully responded to each of Bodine's claims and concluded none could satisfy the standard of § 2254, which permits a federal court to issue a writ of habeas corpus only if the state adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of clearly established Federal law," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1)–(2).

## II. Analysis

This court may issue a COA if a petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where, as here, the district court has rejected the constitutional claim on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

Claim 1: Direct Appeal was a "Mask of Injustice"

In Claim 1, Bodine launches a blanket attack on the manner in which the OCCA reviewed his direct appeal, calling the whole process "inadequate[], ineffective[], and unmeaningful." Pet. Brief in Support of Habeas Petition at 5. Without relevant detail, however, his generalized screed does not state a

cognizable claim for federal habeas relief, which requires a showing that petitioner is being held "in custody in violation of the Constitution or laws or treaties of the United States." *Knox v. Wyoming Dep't of Corrections*, 34 F.3d 964, 966 (10th Cir. 1994) (citing 28 U.S.C. § 2254(a)).

Claim 2: Ineffective Assistance of Counsel

Bodine next claims ineffective assistance of counsel on the grounds that defense counsel failed to respond to the prosecutor's closing argument in which she noted two interviews with the seven-year old victim in the case. According to Bodine, defense counsel should have "immediately called the prosecution as a witness en camera to delve into her interviews with [the victim], as well as discover any and all video/audio recordings and a list of questions asked and responses given." Pet. Brief in Support of COA at 22. Bodine's theory is that the prior interviews were likely to have tainted the child's testimony at trial.

The OCCA reviewed this and other allegations of ineffective assistance of trial counsel under the standard established by *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, Bodine was required to show both cause—that counsel's performance fell below an objective standard of reasonableness—and prejudice—that but for the counsel's error, the outcome of the trial would have been different. The OCCA concluded that Bodine failed to make either showing.

We agree with the magistrate judge that the OCCA's denial of relief on Bodine's ineffective assistance claim neither resulted in a decision contrary to clearly established Federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. No evidence was presented that the victim's testimony was tainted by the prosecutor and the defense counsel's alleged failure to probe more deeply into the alleged interviews does not rise to the level of objective unreasonableness as a trial tactic. Particularly if counsel felt it had nothing to gain from calling the prosecutor as "a witness en camera," we cannot say counsel's conduct was objectively unreasonable.

Claim 3: Prosecutorial Misconduct

Bodine's third claim is that the prosecutor's misconduct in two instances deprived him of the right to a fair trial in violation of due process. First, he alleges the prosecution made a false statement to the jury which in effect "call[ed] defense counsel a liar." Pet. Brief in Support of Habeas Petition at 27. The particular exchange Bodine refers to is laid out in full in the magistrate judge's Report. The prosecutor was responding to defense counsel's cross-examination of the forensic interviewer who mentioned a police report authored by Officer Kathy Dodd, who had previously interviewed the victim in the case:

> DEFENSE COUNSEL: Is that the one where [Officer Dodd] terminated the interview with [the victim] because [the victim] was using more advanced terminology, that she felt like somebody like herself might —

-5-

PROSECUTOR: Your Honor, for heaven's sake, that is absolutely false. I cannot imagine — may we approach?

THE COURT: Wait, wait, wait. Settle down. Come up.

T. Transcript at 168–69.

Outside the hearing of the jury, the prosecutor told the judge defense counsel was putting false information before the jury because Officer Dodd's report did not include the statements defense counsel alleged. Yet, a portion of Officer Dodd's report did state:

> The [victim] was repeating words the [reporting person] would use or an adult would use in reference to the crime, so I asked no further questions so detectives could do an interview of the [victim].

Pet. App., Crime Report at 75–76. While the trial court ultimately sustained the prosecutor's objection, it did tell defense counsel it would consider admitting Officer Dodd's report into evidence if counsel laid the proper foundation. T. Transcript at 170. Defense counsel made no further attempt to introduce Officer Dodd's report into evidence, which led the OCCA to determine that "further consideration of the error is waived." OCCA Op. at 6.

For prosecutorial misconduct to rise to the level entitling petitioner to federal habeas relief, it must either have violated a specific constitutional right, or "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The magistrate judge concluded that the limited statement of the prosecutor within

-6-

earshot of the jury, namely her claim that defense counsel's inference regarding Officer Dodd's report was "absolutely false," did not result in violation of due process per the standard set forth in *Donnelly*. We agree. It is implausible that the jury would have been particularly moved by this brief statement in a lengthy trial full of emotionally charged issues and testimony. Moreover, we agree with the OCCA that defense counsel waived further consideration of the issue in light of his failure to seek admission of Officer Dodd's report.[2]

Bodine further alleges the prosecutor's failure to provide potentially exculpatory evidence to defense counsel impermissibly "infected the trial with unfairness" in violation of *Donnelly*. Bodine refers to the fact that the victim's biological mother and her fiancé were charged with child abuse of the victim's brother. He claims the prosecution was obligated to provide the defense with notice of these charges in keeping with *Brady v. Maryland*, 373 U.S. 83 (1963), which held that the State's suppression of "evidence favorable to an accused . . . violates due process *where the evidence is material either to guilt or to punishment*." *Id.* at 87 (emphasis added).

---

[2] Bodine further argues this failure was an additional basis for his ineffective assistance of counsel claim, but we can neither second-guess defense counsel's trial strategy nor can we conclude that the outcome of trial would have been different had defense counsel sought admission of Officer Dodd's report. Moreover, the OCCA fully addressed all of Bodine's claims of ineffective assistance under *Strickland* and we cannot say the district court's endorsement of the OCCA analysis would be debatable among jurists of reason.

We have held that in order to establish a *Brady* violation for purposes of federal habeas relief, a petitioner must show: (1) the prosecutor suppressed the evidence; (2) the evidence was favorable to the defendant as exculpatory or impeachment evidence; and (3) the evidence was material. *Knighton v. Mullin,* 293 F.3d 1165, 1172 (10th Cir. 2002). The magistrate judge was careful to note that, while defense counsel was perhaps not aware that criminal charges had been filed against the victim's mother, he was aware of the factual circumstances giving rise to the charges and had an opportunity to examine the mother as to those circumstances. Specifically, it became known at trial that social services removed the victim and her brother from their mother's care after the victim's brother suffered a broken leg. While Bodine arguably satisfies the first two prongs of *Brady*, we agree with the magistrate judge that the evidence did not satisfy the materiality requirement of prong three: "Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999).

Given that the jury was apprised of the relevant facts underlying the charges against the victim's mother and her fiancé, we cannot see how the outcome of the trial would have been different if additional evidence of the formal charges against them had been introduced.

Claim 4: Judicial Misconduct

As his final claim for relief, Bodine argues that the judge engaged in an impermissible *ex parte* communication with some of the jurors after the verdict was entered but before the court issued its sentence.

By way of background, in Oklahoma, the jury is allowed to recommend a sentence after the liability phase of trial. 22 Okla. St. Ann. § 926.1. Here, the jury found Bodine guilty on eleven counts of child molestation "in less than an hour" and recommended a sentence of the maximum twenty years. Pet. App. at 186. Bodine claims the trial court impermissibly communicated with the jury prior to sentencing. As evidence of this communication, Bodine quotes the following statement the prosecutor made at the sentencing hearing:

> PROSECUTOR: This jury recommended 20 years which is all they could do on every count. *And they told this Court afterwards that they meant 220 years when they said it.*

Pet. App. at 187.

In support of his contention that the communication violated due process, Bodine cites the Supreme Court's decision in *Rushen v. Spain*, 464 U.S. 114 (1983). In *Rushen*, the Supreme Court reviewed allegations of wrongful communications between a jury and judge during the liability phase of a 17-month trial. While acknowledging that the accused has a "right to personal presence at all critical stages of the trial and the right to counsel," 464 U.S. at

117, the Court concluded that any communication between the trial judge and a juror was harmless:[3]

> This is not to say that *ex parte* communications between judge and juror are never of serious concern or that a federal court on habeas may never overturn a conviction for prejudice resulting from such communications. When an *ex parte* communication relates to some aspect of the trial, the trial judge generally should disclose the communication to counsel for all parties.

464 U.S. at 119–120.

We have reviewed *Rushen* type claims several times before. In those cases, we observed that "if the *ex parte* communication between a juror and judge is improper, we will presume prejudice unless the prosecution can rebut the presumption by showing that the communication did not prejudice the substantial rights of the defendant." *Smallwood v. Gibson*, 191 F.3d 1257, 1279 (10th Cir. 1999). *See also United States v. Carter*, 973 F.2d 1509, 1515 (10th Cir. 1992); *United States v. McDonald*, 933 F.2d 1519, 1524 (10th Cir. 1991). We have not described in detail what constitutes an "improper" communication between judge and jury. But we have, however, identified several specific fact situations where such communication may be deemed proper. *See, e.g., Smallwood*, 191 F.3d at

---

[3] In *Rushen*, during the course of trial the court engaged in an *ex parte* communication with a juror about the juror's recently recovered memory of the murder of an acquaintance when she was a child. The defendant in that case was convicted. On appeal, the federal court of appeals overturned the conviction based on its conclusion that an *ex parte* communication between judge and jury can never amount to harmless error. The Supreme Court disagreed, concluding such communications could be reviewed for harmless error. *Rushen*, 464 U.S. at 118–19.

1279–80 (concluding that "there is nothing inherently disturbing or prejudicial in a juror submitting a question or request to the court," particularly where both sides were apprised of the content of the note and the judge did not respond).[4]

The magistrate judge therefore analyzed Bodine's judicial misconduct claim by asking whether the *ex parte* communication took place during a "critical stage" at trial. While noting the Supreme Court has held that sentencing proceedings constitute such a critical stage, *Mempa v. Rhay*, 389 U.S. 128, 133–34 (1967), the magistrate judge nevertheless concluded the communication at issue in Bodine's case did not occur at a critical stage:

> In this case, the trial court's challenged *ex parte* communication with the jury took place after Petitioner was convicted, after the jury had recommended the maximum sentence for each offense, after the jury had completed its duties, and well before Petitioner's sentence was imposed.

Mag. J. R&R at 14.

---

[4] Whether an *ex parte* communication resulted in prejudice is typically a question of historical fact entitled to deference on review. *See, e.g., Crease v. McKune*, 189 F.3d 1188, 1193–94 (10th Cir. 1999) (quoting *Rushen*, 464 U.S. at 120). However, the OCCA in this case flatly denied the existence of record evidence suggesting an *ex parte* communication: "[W]e find nothing in the appellate record to support [Bodine's] argument the prosecutor met *ex parte* with the judge and jurors after the return of the verdict." OCCA Op. at 6. The magistrate judge found this statement "puzzling because it appears that a copy of the transcript of the sentencing proceeding was part of the record before the OCCA." Mag. J. R&R at 12.

We agree. It is obvious the communication—even if *ex parte*—occurred after the jury had concluded its deliberations and had been discharged.[5] And as is frequently the case in discharging a jury there may be some reference to the case. But the trial judge has the ultimate responsibility to impose the sentence, and the sentencing transcript abundantly makes clear that the judge undertook his sentencing obligation independently and on the record.[6] In fact, the court stated at sentencing:

> THE COURT: There are cases that this Court has heard that shock this conscious [sic]. But the violence one does to a child and the violence that that child will have to live with for the rest of her life, as I have said on more than one occasion, we can only hope that she can work through it. But she will be in prison for the rest of her life because of your actions.
>
> Ms. Pope is correct, the jury found guilt on your part on each and everyone [sic] of these counts in a very short time. They had very little – they had, I can say, no doubt as to the evidence presented by the State of Oklahoma in this case. For those reasons all of these cases will be ordered to serve consecutively.

Pet. App. at 188.

In sum, even if the judge had an improper *ex parte* communication with the jury, any error was harmless. Accordingly, Bodine cannot show that the OCCA

---

[5] Although the prosecutor mentioned the communication between the trial court and the jury, nothing suggests that the defense counsel actually was not present. Moreover, defense counsel made no objection at sentencing on the grounds that the judge was improperly influenced by the jury.

[6] Under Oklahoma law, the sentencing judge determines whether sentences are concurrent or consecutive. 22 Okla. Stat. Ann. § 976.

unreasonably applied Supreme Court law. We thus agree with the district court that a COA is not warranted on this issue.

### III. Conclusion

For the reasons set forth above we deny Bodine's request for a COA.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge