**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 18, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

GLENN HARRIS REESE,

      Petitioner - Appellant,

v.

JAMES YATES, Warden,

      Respondent - Appellee.

No. 18-5107
(D.C. No. 4:15-CV-00418-JHP-JFJ)
(N.D. Oklahoma)

**ORDER DENYING**
**CERTIFICATE OF APPEALABILITY**[*]

Before **McHUGH**, **KELLY,** and **MORITZ**, Circuit Judges.

      Mr. Glenn Harris Reese, an Oklahoma state prisoner proceeding pro se,[1] seeks

a certificate of appealability ("COA") regarding his jury conviction for attempted

manufacture of methamphetamine in violation of Oklahoma law. After being denied

relief in the Oklahoma Court of Criminal Appeals ("OCCA"), Mr. Reese filed a petition

---

[*]This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and 10th Circuit Rule 32.1.

[1] Because Mr. Reese is pro se, "we liberally construe his filings, but we will not act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

for a writ of habeas corpus under 28 U.S.C. § 2254 in the Northern District of Oklahoma. The district court denied his petition and denied him a COA. Mr. Reese timely appealed.

For the following reasons, we deny Mr. Reese's application for a COA and dismiss this appeal.

## I.    BACKGROUND

In 2011, Walmart security guard, Josh Sanders, apprehended Mr. Reese for shoplifting. During the encounter, Mr. Sanders noticed a black bag hanging on the handlebars of Mr. Reese's bike. When Mr. Sanders looked inside the bag, he noted a clear bottle containing a milky white substance. Based on his time as a volunteer for the local police department in Keifer, Oklahoma, Mr. Sanders "associated" the bottle with methamphetamine. Tr. Transcript, Vol. II at 238–39, 244–45. After identifying the contents of the bottle, Mr. Sanders "called the police immediately." *Id.* at 245.

When Officer David Shelby arrived at the Walmart, Mr. Reese's black bag was open enough that he could see a clear bottle in the bag. He described the bottle as "consistent with the appearance of what I have experienced to be one-pot meth labs." *Id.* at 276. At trial, Officer Shelby testified that the most common method of manufacturing methamphetamine in Oklahoma was the "one-pot" or "shake lab" method—all of the required ingredients are placed in a plastic bottle and the mixing of the chemical ingredients causes them to "go[] through the cooking process." *See id.* at 270.

Officer William Mackenzie also arrived to question Mr. Reese, and he testified that he Mirandized Mr. Reese using a *Miranda* card he keeps on his person. Officer Mackenzie testified that Mr. Reese stated he knew he had a shake lab and "he was going

2

to take it to someone that could gas it out." *Id.* at 314. According to Officer Mackenzie, Mr. Reese had manufactured methamphetamine before but never sold it. Mr. Reese's confession was not recorded, nor did Officer Mackenzie have Mr. Reese sign a written waiver of his *Miranda* rights. Mr. Reese did not appear to be under the influence of any drugs and appeared to understand Officer Mackenzie's questions. Mr. Reese was then arrested.

At trial, a forensic scientist Jared Lieser testified that the examination results of the substance in the bottle showed that no controlled substances were "detected" but two ingredients (ammonia and lithium)—commonly used to produce methamphetamine— were "indicated." The lab could only establish that ammonia and lithium were "indicated" because the lab policy requires two separate tests to establish that a chemical was "detected," and no second test was performed. The jury convicted Mr. Reese of attempting to manufacture methamphetamine and petty larceny.

Mr. Reese appealed his conviction to the OCCA, arguing that the evidence was insufficient to support the attempted manufacture of methamphetamine conviction. The OCCA affirmed Mr. Reese's conviction. Mr. Reese then filed a pro se application for post-conviction relief in state court raising five grounds for relief: (1) "illegal search and seizure," (2) "*Miranda* violation," (3) "insufficient evidence," (4) "ineffective assistance of [trial] counsel," and (5) "ineffective assistance of appellate counsel," relating to alleged failure to raise the illegal search claim in Mr. Reese's direct appeal. Dist. Ct. Op. at 2–3. The state court denied relief on the first four grounds, concluding that they were waived because they were not raised on direct appeal. The state court denied relief on

3

ground Five by concluding that the illegal search claim was meritless because "a search conducted by a private citizen does not constitute a search within the meaning of the Fourth Amendment," so appellate counsel was not ineffective for failing to raise it. ROA, Vol. I at 219. The OCCA summarily affirmed.

Mr. Reese then filed a pro se habeas petition under § 2254 in the Northern District of Oklahoma. He alleged the same grounds for relief but expanded his ineffective assistance of appellate counsel claims to include: (5) the failure of appellate counsel to raise an illegal search claim on direct appeal, (6) the failure to raise the *Miranda* violation on direct appeal, and (7) the failure to raise trial counsel's deficient performance on direct appeal. The district court dismissed grounds One, Two, and Four as procedurally barred and grounds Six and Seven as anticipatorily procedurally barred. But the district court reached the merits of grounds Three (insufficient evidence) and Five (failure of appellate counsel the raise the illegal search claim on direct appeal). After reviewing the record, the district court determined that ground Three failed because it could not "find the OCCA unreasonably applied federal law." Dist. Ct. Op. at 15. As to ground Five, the district court determined that it too failed. The district court agreed with the OCCA that the "omitted illegal search argument" was "meritless" and therefore ground Five did not provided a basis for concluding that appellate counsel was ineffective.

Mr. Reese appealed to this court alleging the same grounds for error brought in the district court. We deny a COA on all seven grounds and dismiss this appeal.

4

## II.    ANALYSIS

### A. *Legal Standard*

Because the district court denied a COA, we lack jurisdiction to consider the merits of Mr. Skaggs' appeal unless we issue a COA. *See* 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." *Okyere v. Rudek*, 732 F.3d 1148, 1149 (10th Cir. 2013) (quoting 28 U.S.C. § 2253(c)(2)). That standard requires "showing that reasonable jurists could debate whether (or, for that matter, agree that) the [§ 2254 petition] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 1149–50 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a "district court has rejected the constitutional claims on the merits, the showing required . . . is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

There is an additional layer of deference where the district court denied habeas relief on procedural grounds without reaching the underlying constitutional claim. In such cases, "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* This determination has two components, "one directed at the underlying constitutional claims and one directed at the district court's

5

procedural holding." *Id.* at 485. Both showings must be made for a court to entertain the appeal. *Id.* Ultimately, we may "prompt[ly]" dispose of the petition under either component by "proceed[ing] first to resolve the issue whose answer is more apparent from the record and arguments." *Id.*

When determining whether to issue a COA, we must also consider the deference AEDPA requires for state court decisions. *See Davis v. McCollum,* 798 F.3d 1317, 1319 (10th Cir. 2015). If claims raised in a § 2254 petition were adjudicated on the merits in state court, "we may only grant relief if the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011) (citation omitted) (quoting 28 U.S.C. § 2254(d)(1), (d)(2)). For such claims, "AEDPA imposes a highly deferential standard for evaluating state-court rulings—one that demands that state-court decisions be given the benefit of the doubt, and that prohibits us from substituting our own judgment for that of the state court." *Ellis v. Raemisch*, 872 F.3d 1064, 1083 (10th Cir. 2017) (quotation marks omitted). For a state prisoner to obtain habeas relief, he "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). If that standard seems "difficult to meet, that is because it was meant to be." *Id.* at 102.

6

Thus, the combined standard of review requires Mr. Reese to show that a reasonable jurist could debate that Mr. Reese's grounds for relief should not have been denied by the district court despite the extreme deference federal courts are required to give to state court determinations. We conclude that Mr. Reese has not met this standard.

As noted, Mr. Reese raises seven grounds for relief. We agree with the district court that five of them can be denied on procedural grounds and two on the merits. We will first address those that we can resolve procedurally (grounds One, Two, Four, Six, and Seven) and then turn to those that we resolve on the merits (grounds Three and Five).

## B. *Procedural Bar*

If the state court denied a habeas claim "based on an adequate and independent state procedural rule," the claim is procedurally defaulted for purposes of federal habeas review. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "A state court finding of procedural default is independent if it is separate and distinct from federal law." *Duvall v. Reynolds*, 139 F.3d 768, 796–97 (10th Cir. 1998) (citing *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)). That state court determination is also "adequate" if it is "strictly or regularly followed" and applied "evenhandedly to all similar claims." *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982). Once the state raises the independent and adequate state procedural bar, the burden shifts to the petitioner who, "at a minimum, [is] required to set forth specific factual allegations as to the inadequacy of the state procedure." *Smallwood v. Gibson*, 191 F.3d 1257, 1268 (10th Cir. 1999). A claim is likewise procedurally barred if it has not been exhausted but would be procedurally barred if petitioner raised it upon returning to state court. *See Anderson v. Sirmons*, 476 F.3d 1131, 1139 (10th Cir. 2007). This

7

"anticipatory bar" applies when the state court would refuse to consider the merits of the claim based on an adequate and independent state procedural rule. *Id.*

If a procedural bar applies, a federal court will not review the claim unless the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law" or that a "fundamental miscarriage of justice" will result from the dismissal of the claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

We will first explain why grounds One, Two, and Four are procedurally barred. Next, we will explain why grounds Six and Seven are anticipatorily procedurally barred. Finally, we will discuss whether Mr. Reese can overcome the default, ultimately concluding that he cannot.

## 1.  Grounds One, Two, and Four

Mr. Reese did not raise grounds One, Two, and Four on direct appeal. Mr. Reese did not file for post-conviction relief on his original grounds (One through Five) until after the OCCA denied his direct appeal on what is now ground Three—the sufficiency of the evidence. The OCCA denied post-conviction relief on grounds One, Two, and Four finding that issues not raised previously on direct appeal, but which could have been raised, are waived. Oklahoma law bars review of waived issues unless the petitioner demonstrates a "sufficient reason" for the earlier omission. *See Jones v. State*, 704 P.2d 1138, 1139–40 (Okla. Crim. App. 1985) (quoting Okla. Stat. tit. 22, § 1086); *id.* at 1140 (explaining that § 1086 has been "construed" to "bar the assertion of alleged errors which could have been raised on direct appeal, but were not").

This Court has repeatedly determined that § 1086 is independent of federal law and an adequate procedural bar. *See, e.g.*, *Hale v. Gibson*, 227 F.3d 1298, 1330 n.15 (10th Cir. 2000). Thus, the district court's determination that grounds One, Two, and Four are procedurally barred under an adequate and independent state ground is not fairly debatable by reasonable jurists.

## 2. Grounds Six and Seven

Mr. Reese did not raise grounds Six (failure to raise the *Miranda* violation on appeal) and Seven (failure to appeal based on trial counsel's deficient performance) to the state court. They are therefore unexhausted. *See Ellis v. Raemisch*, 872 F.3d 1064, 1077–82 (10th Cir. 2017), cert. denied, 138 S. Ct. 978, 200 L. Ed. 2d 260 (2018) (explaining that AEDPA requires petitioners to exhaust "all available state remedies" by raising an issue to the highest state court required by state law, either on direct review or in a postconviction collateral attack). The district court determined these claims were anticipatorily barred under § 1086. Because neither ground was raised on direct appeal, § 1086 would provide an independent and adequate procedural bar if Mr. Reese returned to state court to exhaust them. *See Smallwood*, 191 F.3d at 1267 (citing Okla. Stat. tit. 22, § 1086). Therefore, grounds Six and Seven are anticipatorily barred and no reasonable jurist could debate whether the district court's ruling was correct. *See id.*

## 3. Overcoming the Procedural Bar

We cannot reach the merits of grounds One, Two, Four, Six, or Seven unless Mr. Reese can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law" or that a "fundamental miscarriage of justice" will result

9

from not reaching those grounds. *Coleman*, 501 U.S. at 750. This requires Mr. Reese to "show that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rules," *Murry v. Carrier*, 477 U.S. 478, 488 (1986), or Mr. Reese must establish proof of a "fundamental miscarriage of justice" by demonstrating that he is actually innocent, *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). To take advantage of the "actually innocent" test Mr. Reese must present new "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). Further, this new evidence must "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327.

Mr. Reese argues only that he is factually innocent because the state's evidence failed to detect any controlled substance and the lab results did not find any pseudoephedrine, methamphetamine, or any precursor chemical compounds. The district court determined that Mr. Reese did not satisfy the actual innocence exception because he did not point to any new evidence "demonstrating factual innocence, nor d[id his] Reply contain an explicit assertion that he did not commit the crime." Dist. Ct. Op. at 8–9. It is well-established federal law that "'actual innocence' means factual innocence, not mere legal insufficiency," *Bousley v. U.S.*, 523 U.S. 614, 623 (1998), therefore, the district court's determination that Mr. Reese has not overcome the default is not fairly debatable among reasonable jurists. We thus deny a COA on grounds One, Two, Four, Six, and Seven.

10

## C. *Merits*

### 1. Ground Five: Ineffective Assistance of Appellate Counsel

To establish his ineffective assistance of counsel claim, Mr. Reese must show that his attorney's performance was deficient and that he was prejudiced by that deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Performance is deficient when "counsel's representation f[alls] below an objective standard of reasonableness." *Id.* at 688. When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, however, we look to the merits of the omitted issue, and "[i]f the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel." *Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999) (quotation marks omitted).

Mr. Reese alleges he was denied effective assistance of appellate counsel because his counsel failed to raise on direct appeal the argument that the search and seizure of his backpack was unreasonable. Mr. Reese argues that the Walmart employee, Mr. Sanders, violated his Fourth Amendment rights by searching his backpack because Mr. Sanders had a second job as a volunteer police officer and therefore was a state actor. While it is true that the action of private individuals "can sometimes be regarded as governmental action for constitutional purposes," *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 378 (1995), the Fourth Amendment is not implicated by "a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (quoting *Walker v. United States*, 447 U.S.

11

649, 662 (1980) (Blackmun, J., dissenting)). The test is whether the individual "in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state." *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971). To determine whether a search by a private person becomes a government search, ours is a two-part inquiry: "1) whether the government knew of and acquiesced in the intrusive conduct, and 2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends." *United States v. Souza*, 223 F.3d 1197, 1201 (10th Cir. 2000) (quotation marks omitted).

Here, the OCCA found that "counsel's performance was reasonable because the omitted illegal-search argument [was] meritless," reasoning "[t]here is no Fourth Amendment protection from a search conducted by a private citizen." ROA Vol. I at 219, 287. The District Court concluded that the OCCA's determination did not constitute an unreasonable application of federal law because nothing in the record showed that "the government knew or acquiesced to the Walmart employee's decision to look inside [Mr. Reese's] backpack." ROA Vol. I at 287–88. We will not overturn the OCCA decision unless it constitutes an objectively unreasonable application of federal law. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam).

Here, nothing in the record indicates that the government knew of and acquiesced in the intrusive conduct. Mr. Sanders testified that he is not considered a police officer nor is he under the jurisdiction of the police department when he is working for Walmart. The entirety of his employment with the Tulsa Police Department is on a reserve, un-paid, voluntary basis. Similarly, Mr. Sanders testified that no one from the Tulsa Police

12

Department urged or asked him to look in the bag. Tr. Transcript Vol. II at 254 ("Nobody was even there when I looked into the bag."). Therefore, the correctness of the district court's determination that the OCCA did not unreasonably apply federal law in determining the effectiveness of appellate counsel is not fairly debatable. Accordingly, we deny a COA as to ground Five.

## 2. Ground Three: Sufficiency of the Evidence

We review § 2254 sufficiency of the evidence claims under a "twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012). First, a reviewing court will only set aside a jury verdict on grounds of insufficient evidence "if no rational trier of fact could have agreed with the jury." *Cavazos*, 565 U.S. at 2. Second, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge . . . [unless] the state court decision was 'objectively unreasonable.'" *Id*. (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). The proper inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original. A reviewing court will "presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any . . . conflicts [in the record] in favor of the prosecution." *Id.* at 326.

To determine whether there was sufficient evidence presented at trial to sustain Mr. Reese's conviction, the standard must be applied "with explicit reference to the substantive elements of the criminal offense" as defined by Oklahoma law. *Id.* at 324 n.16. Oklahoma law prohibits any person from "manufactur[ing] or attempt[ing] to

13

manufacture any controlled dangerous substance or possess[ing] . . . any detectable amount of [certain enumerated substances] . . . with the intent to . . . manufacture a controlled dangerous substance." *See* Okla. Stat. tit. 63 § 2-401(G)(1). Here, Mr. Reese was convicted of attempting to manufacture a controlled substance. To prove Mr. Reese attempted to manufacture a controlled substance the State must show that he: (1) knowingly and intentionally, (2) attempted to manufacture, (3) a controlled dangerous substance. Okla. Stat. tit. 63 § 2-401(G); *see also* Okla. Unif. Crim. Jury Instr. CR 6-3.

The OCCA found all elements were met because Mr. Reese's knowing possession of a "shake lab" was an attempt to manufacture methamphetamine, "even if the process was incomplete—indeed, even if it were impossible under the circumstances." ROA Vol. I at 109. The district court found the OCCA determination that the evidence was sufficient did not constitute an unreasonable application of federal law because "reviewing the trial transcripts and exhibits in the light most favorable to the State, . . . a[] rational trier of fact could have found beyond a reasonable doubt that [Mr. Reese] attempted to manufacture methamphetamine." Dist. Ct. Op. at 14.

Mr. Reese argues that the evidence presented at trial was insufficient because the State failed to prove the second and third elements beyond a reasonable doubt. He argues the evidence presented at trial proved only an indication of the prohibited substances rather than a detectable amount as required under Oklahoma law. *See* Okla. Stat. tit. 63 § 2-401(G). Mr. Reese asks that this court "take [j]udicial [n]otice of the language of" § 2-401(G) and find that an indication does not satisfy this statute. Appellant's Br. at 17–18.

14

Mr. Reese misinterprets § 2-401(G). He was convicted of attempting to manufacture methamphetamine, not of possessing a "detectable amount" of one of the enumerated substances with the intent to manufacture methamphetamine. *See* Okla. Stat. tit. 63 § 2-401(G). The "detectable amount" language only applies to the possession of those enumerated substances. *See id.* And we will not overturn the OCCA's determination that the evidence was sufficient to sustain a conviction for attempting to manufacture methamphetamine unless it was "objectively unreasonable." *Cavazos*, 565 U.S. at 2 (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

Here, the forensic scientist testified that two out of three required substances for making methamphetamine (ammonia and lithium) were indicated in Mr. Reese's bottle. Officer Mackenzie testified[2] that Mr. Reese "knew he had a shake lab" and Mr. Reese "stated that he was going to take it to someone that could gas it out." Tr. Transcript Vol. II at 314. Further, Officer Shelby testified that Mr. Reese's bag contained a bottle which

---

[2] Mr. Reese also argues the evidence presented at trial was insufficient because Officer Mackenzie's testimony regarding Mr. Reese's confession is unsupported and inadmissible under Oklahoma state law and federal *Miranda* waiver requirements. First, Mr. Reese argues that the confession is "not admissible under Oklahoma law unless it is supported by 'substantial independent evidence which would tend to establish its trustworthiness.'" Appellant's Br. at 18 (quoting *Short v. State*, 980 P.2d 1081, 1096 (Okla. Crim. App. 1999). However, under 28 U.S.C. § 2254, we review the "unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," not challenges to the admissibility of evidence under state law, *see* 28 U.S.C. § 2254(d)(1), and Mr. Reese has not argued that the alleged departure from state law amounted to a federal constitutional violation. Second, Mr. Reese argues Officer Mackenzie failed to get a signed *Miranda* waiver and therefore the confession's admission should be prohibited. As noted above, the *Miranda* waiver argument is procedurally barred. Because Mr. Reese has no grounds to challenge the admissibility of Officer's Mackenzie's testimony, we will not exclude it from our sufficiency of the evidence analysis.

was "consistent with the appearance of what [he] ha[d] experienced to be one-pot meth labs." *Id.* at 276. Based on this evidence, a rational jury could find that Mr. Reese knowingly and intentionally attempted to manufacture methamphetamine, a controlled substance. Therefore, the correctness of the district court's determination that the OCCA did not unreasonably apply federal law in determining the sufficiency of the evidence is not fairly debatable. We deny a COA on ground Three.

### III. CONCLUSION

We DENY Mr. Reese's request for a COA and DISMISS this appeal.

Entered for the Court


Carolyn B. McHugh
Circuit Judge